Affirmed and Memorandum Opinion filed May 22, 2008








Affirmed
and Memorandum Opinion filed May 22, 2008.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00895-CV

____________

 

ARBORETUM NURSING AND
REHABILITATION CENTER OF WINNIE, INC., Appellant

 

V.

 

MARY ISAACKS, INDIVIDUALLY AND AS
REPRESENTATIVE OF THE ESTATE OF ROBERT ISAACKS, SR., DECEASED, AND ROBERT
ISAACKS, JR. AND DEBRA GERNERT, INDIVIDUALLY, Appellees

 



 

On Appeal from the 253rd
District Court

Chambers County, Texas

Trial Court Cause No. 23389

 



 

M E M O R A N D U M   O P I N I O N








This is a health care liability lawsuit governed by chapter
74 of the Texas Civil Practice and Remedies Code.  Tex. Civ. Prac. & Rem. Code Ann. ' 74.001B.507 (Vernon
2005).  Arboretum Nursing and Rehabilitation Center of Winnie brings this
interlocutory appeal from the trial court=s denial of its
motion to dismiss, which was based on the alleged inadequacy of the preliminary
expert report prepared by Dr. Lige Rushing and filed by Mary Isaacks, Robert
Isaacks= widow, along with
her children, Robert Isaacks Jr. and Debra Gernert.  On appeal, Arboretum
contends the report is inadequate because it fails to address (1) causation,
(2) all of appellees= claims, and (3) Rushing=s qualifications
to render an opinion.  We affirm.

I.  Factual Background

On April 15, 2005, Robert Isaacks, Sr. was admitted to the
Arboretum for long term care.[1] 
At the time of his admission, he had been diagnosed with Alzheimer=s disease, left
carotid artery stenosis, diet-controlled diabetes, renal insufficiency,
dyslipidemia, osteoarthritis, right knee arthritis, and left lung collapse. 
Approximately one year later, on April 24, 2006, a nurse noted that pressure
ulcers had developed on Mr. Isaacks= right ankle and
under his right foot.  Mr. Isaacks suffered a fall on the same day and was
admitted to Bayside Hospital where he remained until May 1, 2006.

The attending physician at Bayside Hospital noted a plantar
ulcer on Isaacks= foot and a pressure ulcer on his right
ankle.  The plantar ulcer on the right foot was noted to be healing at the time
of discharge.  When Isaacks was re-admitted to the Arboretum, the admission
nursing assessment noted the ankle ulcer was two centimeters in size with a six
centimeter reddened area around it.  The plantar ulcer was one and one-half
centimeters in diameter and one and one-half centimeters deep with no
drainage.  By June 2, 2006, the right ankle ulcer had increased in size and was
diagnosed as a Stage III ulcer.  On the same day, due to the advanced stage of
infection, Isaacks= right leg was amputated above the knee. 
On June 27, 2006, Isaacks died as a result of aspiration pneumonia.  Aspiration
pneumonia results when acidic gastric content or other foreign material is
aspirated in the lining of the lungs.








On April 23, 2007, Isaacks= widow and
children filed suit against Arboretum alleging survival and wrongful death
causes of action.  As is required by Chapter 74 of the Civil Practice and
Remedies Code, appellees submitted the report of Dr. Lige B. Rushing.  See
Tex. Civ. Prac. & Rem. Code Ann.
' 74.351 (Vernon
2006).  On June 7, 2007, Arboretum filed objections to Dr. Rushing=s expert report
and moved to dismiss appellee=s petition.  On June 18, 2007, Rushing
supplemented his original report.  On June 28, 2007, the trial court held a
hearing and denied Arboretum=s motion to dismiss.  Pursuant to section
51.014 of the Texas Civil Practice and Remedies Code, the Arboretum filed this
interlocutory appeal.

II.  Jurisdiction

Appellees argue that Arboretum cannot bring an
interlocutory appeal from the trial court=s denial of its
motion to dismiss.  A person may appeal from an interlocutory order issued
pursuant to section 74.351 when the trial court: (1) denies the relief sought
under section 74.351(b); or (2) grants the relief sought under section 74.351(l). 
See Tex. Civ. Prac. & Rem.
Code Ann. ' 51.014(a)(9), (10); Olgetree v.
Matthews, 2007 WL 4216606, 51 Tex. Sup. Ct. J. 165 (Tex. Nov. 30, 2007). 
Appellees argue that Arboretum=s interlocutory appeal would be proper
only under section 51.014(a)(10), which applies when an expert report was filed
and the trial court granted the motion to dismiss on the basis of an inadequate
report.  Since appellees filed their brief, the supreme court held that a
challenge to the sufficiency of an expert report is a challenge pursuant to
section 74.351(b) that no compliant report has been served.  Lewis v.
Funderburk, No. 06-0518 2008 WL 1147188, 51 Tex. Sup. Ct. J. 747 (Tex.
April 11, 2008).  Therefore, we have jurisdiction to consider Arboretum=s interlocutory
appeal.

III. Standard of Review








A plaintiff asserting a healthcare liability claim must
submit an expert report to each healthcare provider and defendant physician.  Tex. Civ. Prac. & Rem. Code Ann. ' 74.351(a). 
A compliant expert report is defined as a written report providing a fair
summary of the expert=s opinions regarding the standard of care,
the manner in which the care rendered by the health care provider failed to
meet the standard of care, and the causal relationship between that failure and
the harm claimed.  Tex. Civ. Prac. &
Rem. Code Ann. ' 74.351(r)(6).  The trial court shall
grant a motion challenging the adequacy of an expert report only if it appears
to the court, after hearing, that the report does not represent an objective
good faith effort to comply with the definition of an expert report in
subsection (r)(6).  Tex. Civ. Prac.
& Rem. Code Ann. ' 74.351(l).  We review a trial
court=s decision on a
motion to dismiss under section 74.351 of the Civil Practice and Remedies Code
for abuse of discretion.  Estate of Regis ex rel. McWashington v. Harris
County Hosp. Dist., 208 S.W.3d 64, 67 (Tex. App.CHouston [14th
Dist.] 2006, no pet.).  

To constitute a good faith effort, an expert=s medical
liability report must establish the expert=s qualifications,
the applicable standard of care, how that standard was breached by the
particular actions of the defendant, and how the breach caused the damages
claimed by the plaintiff.  Am. Transitional Care Ctrs. of Tex., Inc. v.
Palacios, 46 S.W.3d 873, 878B79 (Tex. 2001). 
Although an expert report need not marshal and present all of the plaintiff=s proof, a report
that omits any of the elements required by the statute does not constitute a
good faith effort.  Id.

IV.  Adequacy of Expert Report

A. 
Causation

In its first issue, Arboretum contends that Dr. Rushing=s report is not
sufficient to establish causation.  Arboretum first argues that Rushing=s report is
inadequate because it is based on assumptions, not facts.  Arboretum identified
sources of information that Rushing stated  were unavailable or unclear from
the medical records.  In his report, Rushing refers to ulcers that were present
on Isaacks= foot and ankle at the time Isaacks was re-admitted to
the Arboretum on May 1, 2006:

The records at Arboretum, E-Z graph shows that the lateral malleolus
[ankle] ulcer increased in size from 05/07/06 to 05/30/06.  The E-Z graph wound
assessment also indicates there is a posterior right foot ulcer.  However, this
is not marked on the manikins and I am unable to determine the precise
location.  The records are simply insufficient to determine if this is a new
ulcer or the original plantar ulcer.








* * * * *

There is a note on 06/02/06 by a wound care nurse that the right
lateral malleolus ulcer is 4.5 cm x 4.5 cm in size.  A photograph was also made
at this time and there is a black and white reproduction that is unclear and
that I am unable to interpret.

* * * * *

I am unable to find a surgical pathology report describing the
amputated right leg in the records provided to me.

 

In his
supplemental report, Rushing states that the above statements did not form any
basis of his opinion, but were included for the purposes of completeness and
thoroughness.

Arboretum claims that in forming his opinion, Rushing
inappropriately relied on Arboretum=s incomplete
records.  Specifically, Arboretum claims that Rushing failed to rule out the
possibility that a new ulcer could have formed while Isaacks was at Bayside
Hospital.  We do not read Rushing=s report as
leading to such a conclusion.  Rushing=s statement about
the possibility of a new ulcer was based on notes that were recorded May 30,
2006, one month after Isaacks was discharged from Bayside Hospital.  Any
possibility of a new ulcer appears to be attributable to Arboretum, not
Bayside.  Moreover, whether an additional ulcer occurred at Bayside Hospital is
irrelevant to the issue of whether the ulcers that were first discovered at
Arboretum contributed to Isaacks= injuries. 








To constitute an objective good-faith effort, an expert
report must provide enough information to fulfill two purposes.  The report
must inform the defendant of the specific conduct the plaintiff has called into
question, and it must provide a basis for the trial judge to conclude the
claims have merit.  Palacios, 46 S.W.3d at 878B79.  In his
supplemental report, Rushing reported that the standard of care for the nursing
home and their nurses requires that they (1) inspect and assess the skin, head
to toe, every day with particular attention to pressure points such as heels,
toes, hip, and sacrum, (2) document new skin changes on the very day that they
are noted, (3) perform a regular and detailed documented skin assessment once a
week, and (4) treat the stage I and stage II pressure ulcers as soon as they
are discovered.

Dr. Rushing reported that the standard of care required
that once stage I and II pressure ulcers were discovered, they should be
treated by relieving pressure on the affected area and ensuring that nothing
touched the ulcer.  Dr. Rushing opined that by failing to perform regular skin
assessments and properly treat the stage I and II ulcers, the nursing staff  at
Arboretum breached the standard of care.  Dr. Rushing further opined that most
stage I and II ulcers, when treated properly, heal well.  Had the ulcers been
diagnosed and treated in the earlier stages, they would have healed and not
progressed to stage III ulcers and osteomyelitis, ultimately resulting in
amputation of the leg.

Dr. Rushing=s report addresses the pain and mental
anguish suffered by Isaacks when his leg was amputated.  Dr. Rushing opined
that the cutting of the skin and deeper tissue including the bone is associated
with physical pain due to the severing of the sensory nerves.  Dr. Rushing
opined that amputation is associated with mental anguish because of the human
cerebral/emotional response to the loss of a body part.  With regard to Mr.
Isaacks= death, Dr.
Rushing opined that following the surgery, Mr. Isaacks was further debilitated
and weakened Ato the point where he could not protect the
tracheobronchial tree from inhalation/aspiration of fluid particles.@  This inability
to protect the tracheobronchial tree led to aspiration pneumonia, which caused
Mr. Isaacks= death.

Appellees filed suit alleging causes of action for physical
pain and mental anguish suffered prior to Isaacks= death and seeking
medical expenses incurred prior to his death.  Appellees also alleged a cause
of action for the wrongful death allegedly attributable to Arboretum=s negligence. 
Rushing=s report
sufficiently stated the standard of care and breach of that care.  








Arboretum complains that Rushing speculates about the
possibilities that could happen regarding Isaacks= pressure ulcers
and ultimate death, but falls short of a good-faith effort to comply with the
statute.  Specifically, Arboretum contends that Anon-detection@ and Anon-treatment@ do not show
causation.  In his report, Rushing states that inspection and assessment of the
skin is crucial to detect skin abnormalities before they become infected. 
Rushing stated that the Astandard of care requires that when a
resident enters a long-term facility without pressure ulcers that they be
provided the necessary care and treatment to prevent the development of
pressure ulcers unless their clinical condition demonstrates that the ulcers
are unavoidable.  There was nothing in Mr. Isaacks= history to
indicate that this pressure ulcer was unavoidable or inevitable.@  He further
states, AWith early
recognition and early aggressive treatment of stage I and stage II ulcers, a
cure can be accomplished in almost every case.@  








Arboretum cites several cases in support of its contention
that Rushing=s report is conclusory as to causation.  However,
those cases are factually distinguishable in that the expert reports in those
cases contained an analytical gap not found in Rushing=s report.  See
e.g., Clark v. HCA, Inc., 210 S.W.3d 1, 11 (Tex. App.CEl Paso 2005, no
pet.) (missing link in report linking use of drug to syndrome suffered by
plaintiff); Davis v. Spring Branch Med. Ctr., Inc., 171 S.W.3d 400, 409B10 (Tex. App.CHouston [14th
Dist.] 2005, no pet.) (statement that nursing home Arobbed [appellant]
of quality of life, and hastened the loss of her legs@ considered
conclusory because it did not link breach of standard of care with injury); Hillman
v. Diagnostic Clinic of Houston, P.A., No. 01-04-00580-CV, 2005 WL 995453,
*4 (Tex. App.CHouston [1st Dist.] April 28, 2005, no pet.) (memo.
op.) (expert=s conclusion not explained or linked to any facts
demonstrating a specific departure from the standard of care); Davis v.
Markey, No. 03-04-00455-CV, 2005 WL 670525, *4 (Tex. App.CAustin March 24,
2005, pet. denied) (memo. op.) (report failed to link failure to be vigilant in
the post-operative period to the conclusion that the alleged error increased
the plaintiff=s disability); and Barko v. Genzel, 123 S.W.3d
457, 460 (Tex. App.CEastland 2003, no pet.) (conclusion that A[t]hese violations
of the standards of emergency medical practice were a proximate cause of this
patient=s injury@ insufficient
because it merely stated the expert=s conclusions
about causation, but did not link alleged error to patient=s injury).

Arboretum further argues that Rushing merely speculated
about the possibilities that could happen and that such speculation does not
constitute a good-faith effort to comply with the statute.  For this
proposition, Arboretum cites Estate of Allen v. Polly Ryon Hosp. Auth.,
No. 01-04-00151-CV, 2005 WL 497291 (Tex. App.CHouston [1st
Dist.] March 3, 2005, no pet.).  In that case, an elderly male patient suffered
from pressure ulcers, and his family sued his treating doctors and hospital for
negligent nursing care.  Id. at *1.  The expert report described the
standard of care for treatment of pressure ulcers and alleged that the hospital
and doctor had not followed the appropriate standard.  Id. at *5.  The
report then stated that, A[a]s a result these wounds were more
likely to persist and/or worsen, increasing [the patient]=s level of pain
and risk of wound infection.@  Id.  The court found that a
report that Arecites mere possibilities of a better outcome, as
here, without explaining how the defendant caused the injury alleged, is
conclusory and therefore does not comply with the good-faith effort requirement
of the statute[.]@  Id.  








Rushing=s report differs from those in the cited
cases in that his statements link the breach of the standard of care to the
cause of Isaacks= injury and death.  He explains that if
Isaacks= skin had been
properly monitored, he would not have developed pressure ulcers, and the ulcers
would not have become infected.  Further, Rushing goes beyond reciting mere
possibilities of a better outcome and opines that if the nursing home had
followed the proper standard of skin detection and treatment at the early
stages of the ulcers, more likely than not, Isaacks would have recovered. 
Finally, Rushing=s report sufficiently describes how
Isaacks= pneumonia could
have been caused by the inability to protect the tracheobroncihial tree due to
his weakened state as a result of the infection and amputation.  Dr. Rushing=s report does not
state conclusions without reference to the underlying facts upon which he
premised his opinion.  See Patel v. Williams ex rel. Estate of Mitchell,
237 S.W.3d 901, 904 (Tex. App.CHouston [14th Dist.] 2007, no pet.).  We
find that Rushing=s report discusses the standard of care,
breach, and causation with sufficient specificity to inform Arboretum of the
conduct appellees have called into question and to provide a basis for the
trial court to conclude that appellees= claims have merit. 
See Palacios, 46 S.W.3d at 875; see also, Agana v. Terrell,No.
09-07-088-CV; 2007 WL 1793786 at *6 (Tex. App.CBeaumont June 21,
2007, no pet.) (memo. op.) (Because Abedsores are
observable by visual examination,@ expert report
stating that failure to properly monitor patient=s skin proximately
caused bedsores was adequate under section 74.351).  Arboretum=s first issue is
overruled.

B.      Elimination
of Other Causes

In its second issue, Arboretum claims Rushing=s report fails to
eliminate pre-existing conditions as the cause of injury and death.  Arboretum
contends that Rushing identified numerous pre-existing conditions suffered by
Isaacks, but failed to eliminate those conditions beyond Arboretum=s control as
causes of his injury or death.  See Pisasale v. The Ensign Group, Inc.,
No. 11-05-00196-CV, 2006 WL 2567400, at *4 (Tex. App.CEastland September
7, 2006, pet. denied) (memo. op.) (holding expert report did not constitute a
good‑faith effort to comply with statute where, among other things,
expert Amade no effort to
eliminate [the deceased=s] preexisting conditions as the cause for
the injuries described in his report@).  

We have previously held that such an opinion is not
required.  Chaupin v. Schroeder, No. 14-06-01102-CV; 2007 WL 2127713 at
*8 (Tex. App.CHouston [14th Dist.] July 26, 2007, no pet.) (memo.
op.).  Further, in his report, Rushing addressed Isaacks= pre-existing
conditions when he stated, A[t]here is nothing in Mr. Isaacks history
to indicate that this pressure ulcer was unavoidable or inevitable.@  Arboretum=s second issue is
overruled.

C.      Failure to
Address All Claims








In its third issue, Arboretum contends that Rushing=s expert report
fails to address all of appellees= claims.  To
constitute a good-faith effort, the report must inform the defendant of the
specific conduct the plaintiff has called into question.  Cayton v. Moore,
224 S.W.3d 440, 445 (Tex. App.CDallas 2007, no pet.) (citing Palacios,
46 S.W.3d at 879).  In addressing each element of the statute, the report
qualifies as a good-faith effort if, in describing the expert=s opinion on the
statutory elements, it provides enough information to (1) inform the defendant
of the specific conduct at issue, and (2) provide a basis for the trial court
to conclude the plaintiff=s claims are meritorious.  Cayton,
224 S.W.3d at 445.  If an expert report omits any of the statutory elements, it
cannot be a good-faith effort.  Id.

Arboretum first claims Rushing=s report did not
address Isaacks= physical pain and mental anguish. 
However, in his supplemental report, Rushing stated that Isaacks suffered
amputation of his right leg and that such an amputation is associated with
physical pain and mental anguish due to cutting sensory nerves and the
emotional response to loss of a limb.  We conclude that Rushing=s report is a fair
summary of the harm suffered by Isaacks.  

Next, Arboretum claims that Rushing=s report failed to
address several specific contentions in appellees= petition.  An
expert report must provide a fair summary of the standard of care, the manner
in which the care rendered failed to meet the standard, and the causal
relationship between that failure and the harm claimed.  Tex. Civ. Prac. & Rem. Code Ann. ' 74.351(r)(6). 
The expert=s report need not identify all evidence necessary to
litigate the merits of the plaintiff=s case, nor must
it marshal all of the plaintiff=s proof. Bowie Memorial Hosp. v. Wright,
79 S.W.3d 48, 52 (Tex. 2002); Gray v. CHCA Bayshore L.P., 189 S.W.3d
855, 859 (Tex. App.CHouston [1st Dist.] 2006, no pet.). 
Rushing=s report
sufficiently addresses the statutory elements.  Although the report does not
address each detail of the plaintiff=s petition, there
is no requirement that the report meet the same requirements as evidence
offered in summary judgment proceedings or in a trial.  Cayton, 224
S.W.3d at 445.  Arboretum=s third issue is overruled.

D. 
Rushing=s Qualifications








In its fourth issue, the Arboretum contends that the report
fails to establish that Rushing is qualified to provide an expert medical
report.  Specifically, Arboretum contends that Dr. Rushing=s report and
curriculum vitae do not provide sufficient details regarding relevant
experience.  To provide a compliant report, the expert must establish that he
or she is qualified to do so.  Tex. Civ.
Prac. & Rem. Code Ann. ' 74.351(r)(5)(A). 
An expert providing opinion testimony regarding whether a health care provider
departed from the accepted standards of health care must satisfy the
requirements set forth in section 74.402. Tex.
Civ. Prac. & Rem. Code Ann. ' 74.351(r)(5)(B).
Section 74.402 provides:

(b) In a suit involving a health care liability claim against a health
care provider, a person may qualify as an expert witness on the issue of
whether the health care provider departed from accepted standards of care only
if the person:

 

(1) is practicing health care in a field of practice that involves the
same type of care or treatment as that delivered by the defendant health care
provider, if the defendant health care provider is an individual, at the time
the testimony is given or was practicing that type of health care at the time
the claim arose;

 

(2) has knowledge of accepted standards of care for health care
providers for the diagnosis, care, or treatment of the illness, injury, or
condition involved in the claim; and

 

(3) is qualified on the basis of training or experience to offer an
expert opinion regarding those accepted standards of health care.

 

Tex. Civ. Prac. & Rem. Code Ann. ' 74.402(b).  

In determining whether a witness is qualified Aon the basis of
training or experience,@ the court shall consider whether, at the
time the claim arose or at the time the testimony is given, the witness:

(1) is certified by a licensing agency of one or more states of the
United States or a national professional certifying agency, or has other
substantial training or experience, in the area of health care relevant to the
claim; and

 








(2) is actively practicing health
care in rendering health care services relevant to the claim.

Tex. Civ. Prac. & Rem. Code Ann. ' 74.402(c)(1)B(2).

Arboretum claims that Rushing=s report and
curriculum vitae contain only conclusory statements and do not show Rushing=s experience with
(1) pressure ulcers in patients suffering from medical conditions identical to
those of Isaacks, (2) MRSA B streptococcus infections, or (3)
aspiration pneumonia.  Section 74.402 does not require that Dr. Rushing have
experience with patients identical to Isaacks.  Rather, the focus of our
inquiry is whether Dr. Rushing practices health care in a field of practice
that involves the same type of care or treatment as that delivered by
Arboretum.  See Group v. Vicento, 164 S.W.3d 724, 732 (Tex. App.CHouston [14th Dist.]
2005, pet. denied).

Rushing=s report and curriculum vitae reveal that
he is board certified in internal medicine, rheumatology, and geriatric
medicine.  He is currently engaged in the private practice of medicine and is
on the attending staff of Presbyterian Hospital in Dallas, Texas.  Rushing
further stated his opinions were based on his experience caring for patients
both in the hospital and nursing home settings.  He also has worked closely
with and supervised nurses who have been assigned to provide nursing care and
treatment for his patients.  Finally, the report states:

In the regular course of my medical practice, I have occasion to
diagnose and treat patients with conditions substantially similar to or identical
with Mr. Isaacks.  I have also served as a primary care physician for more than
10,000 hospitalized and nursing home patients.  Many of these patients have had
the same types of condition as Mr. Isaacks.  Accordingly I have cared for and
treated many patients who were at a risk for the development of pressure
ulcers.  Likewise, I have treated patients who have pressure ulcers over the
course of my career.

 








Rushing=s report and curriculum vitae adequately
demonstrate that he is qualified under section 74.402 of the Civil Practice and
Remedies Code.  Rushing=s report states that he was practicing
medicine at the time his report was given, he has knowledge of the accepted
standards of medical care for the diagnosis, cure, or treatment of pressure
ulcers and infections related to those ulcers, and he is qualified on the basis
of training and experience to offer an expert opinion regarding those standards
of care.  The report states specifically that Rushing has experience with
patients under similar or identical conditions as Isaacks.  The trial court did
not abuse its discretion in denying Arboretum=s motion to
dismiss.  Arboretum=s fourth issue is overruled.

Accordingly, we affirm the trial court=s denial of the
motion to dismiss.

 

 

/s/      Adele Hedges

Chief Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed May 22, 2008.

Panel consists of
Chief Justice Hedges and Justices Brown and Boyce.

 









[1]  Background facts are derived from Dr. Rushing=s report.