02-10-350-CV








 




 
 
 
 
 
  
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
 
 




 

 

NO. 02-10-00350-CV 

 

 




 
 
 Donald L. Washington, Jr., M.D.
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 Bulmaro Alvarez, Individually and as Representative
 of the Estate of Sandra Alvarez, Deceased and as Next Friend of Saray Alvarez
 and Maria Alvarez, Minors, and Sandy Alvarez, Individually
 
 
  
 
 
 APPELLEES 
 
 




 

 

----------

 

FROM THE 96th
District Court OF Tarrant COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

          Donald
L. Washington, Jr., M.D., a pulmonologist, appeals from the trial court’s
interlocutory order refusing to dismiss the health care liability claims of
appellees Bulmaro Alvarez, individually and as representative of the Estate of
Sandra Alvarez, deceased, and as next friend of Saray Alvarez and Maria
Alvarez, minors, and Sandy Alvarez, individually.  We affirm.

Procedural
Background

          Appellant
participated in the postoperative care of Sandra Alvarez after she had a
hysterectomy.  Alvarez died after developing complications from bleeding.  Appellees
filed an expert report with their original petition asserting health care
liability claims against all of the doctors involved in Alvarez’s care; appellees
filed an amended report four months later in response to appellant’s
objections.  After appellant filed a motion to dismiss, the trial court found
that the reports were a good faith effort but were nevertheless deficient for
addressing the doctors’ breaches as a group.  The trial court extended the
deadline for serving a sufficient report for thirty days.  Appellees filed a
second amended expert report; the trial court overruled appellant’s objections
to that report and denied appellant’s second motion to dismiss.  

Standard
of Review

A
trial court=s decision on a motion to dismiss under
section 74.351 is subject to an abuse of discretion standard.  See, e.g.,
Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d 873, 875
(Tex. 2001).  To determine whether a trial court abused its discretion, we must
decide whether the trial court acted without reference to any guiding rules or
principles; in other words, we must decide whether the act was arbitrary or
unreasonable.  Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241B42
(Tex. 1985), cert. denied, 476 U.S. 1159 (1986).  Merely because a trial
court may decide a matter within its discretion in a different manner than an
appellate court would in a similar circumstance does not demonstrate that an
abuse of discretion has occurred.  Id. at 242.  A trial court does not
abuse its discretion if it commits a mere error in judgment.  See E.I. du
Pont de Nemours & Co. v. Robinson, 923 S.W.2d 549, 558 (Tex. 1995).

Expert
Report Requirements

In a
health care liability claim, a claimant must serve on each defendant an expert
report that addresses standard of care, liability, and causation no later than
the 120th day after the claim is filed.  Tex. Civ. Prac. & Rem. Code Ann. ' 74.351(a),
(j) (West 2011); Barber v. Mercer, 303 S.W.3d 786, 790 (Tex. App.CFort
Worth 2009, no pet.).  If an expert report has not been served on a defendant
within the 120‑day period, then on the motion of the affected defendant,
the trial court must dismiss the claim with prejudice and award the defendant
reasonable attorney=s fees and costs.  Tex. Civ.
Prac. & Rem. Code Ann. ' 74.351(b); Barber,
303 S.W.3d at 790.  A report Ahas not been served@
under the statute when it has been physically served but it is found deficient
by the trial court.  Lewis v. Funderburk, 253 S.W.3d 204, 207B08
(Tex. 2008); Barber, 303 S.W.3d at 790B91. 
When no report has been served because the report that was served was found to
be deficient, the trial court has discretion to grant one thirty-day extension
to allow the claimant the opportunity to cure the deficiency.  Tex. Civ. Prac.
& Rem. Code Ann. ' 74.351(c); Barber,
303 S.W.3d at 791.

A
report is deficient (therefore subjecting a claim to dismissal) when it Adoes
not represent an objective good faith effort to comply with the definition of
an expert report@ in the statute.  Tex. Civ.
Prac. & Rem. Code Ann. ' 74.351(l); Barber,
303 S.W.3d at 791.  While the expert report Aneed
not marshal all the plaintiff=s proof,@  Palacios,
46 S.W.3d at 878, it must provide a fair summary of the expert=s
opinions as to the Aapplicable standards of
care, the manner in which the care rendered by the physician or health care
provider failed to meet the standards, and the causal relationship between that
failure and the injury, harm, or damages claimed.@ 
Tex. Civ. Prac. & Rem. Code Ann. '
74.351(r)(6); Barber, 303 S.W.3d at 791.

To
qualify as a good faith effort, the report must Adiscuss
the standard of care, breach, and causation with sufficient specificity to
inform the defendant of the conduct the plaintiff has called into question and
to provide a basis for the trial court to conclude that the claims have merit.@  Palacios,
46 S.W.3d at 875; Barber, 303 S.W.3d at 791.  A report does not fulfill
this requirement if it merely states the expert=s
conclusions or if it omits any of the statutory requirements.  Palacios,
46 S.W.3d at 879; Barber, 303 S.W.3d at 791.  The information in the
report Adoes
not have to meet the same requirements as the evidence offered in a summary‑judgment
proceeding or at trial.@  Palacios, 46 S.W.3d
at 879; Barber, 303 S.W.3d at 791.  When reviewing the adequacy of a report,
the only information relevant to the inquiry is the information contained
within the four corners of the document alone. Palacios, 46 S.W.3d at
878; Barber, 303 S.W.3d at 791; see Bowie Mem’l Hosp. v.
Wright, 79 S.W.3d 48, 52 (Tex. 2002).  This requirement precludes a court
from filling gaps in a report by drawing inferences or guessing as to what the
expert likely meant or intended.  Barber, 303 S.W.3d at 791; see
Austin Heart, P.A. v. Webb, 228 S.W.3d 276, 279 (Tex. App.––Austin 2007, no
pet.) (citing Bowie Mem=l Hosp., 79
S.W.3d at 53).

“[I]t
is not enough that the expert report ‘provided insight’ about the plaintiff’s
claims.  Rather, to constitute a good-faith effort to establish the
causal-relationship element, the expert report must fulfill Palacios’s
two-part test.”  Bowie Mem’l Hosp., 79 S.W.3d at 52 (citation omitted); Farishta
v. Tenet Health Sys. Hosps., Inc., 224 S.W.3d 448, 453 (Tex. App.––Fort
Worth 2007, no pet.).  The expert “must explain the bases of the statements
[made regarding causation] and link his or her conclusions to the facts.”  Farishta,
224 S.W.3d at 453–54 (quoting Longino v. Crosswhite, 183 S.W.3d 913, 917–18
(Tex. App.––Texarkana 2006, no pet.)).  The report must provide enough
information within the document to both inform the defendant of the specific
conduct at issue and to allow the trial court to conclude that the suit has
merit.  Bowie Mem’l Hosp., 79 S.W.3d. at 52.

Analysis

In two issues, appellant claims that the
trial court abused its discretion by failing to dismiss appellees’ claims
against him with prejudice because the amended expert report failed to
adequately or sufficiently address the issue of proximate cause with respect to
appellant.

The
pertinent parts of the expert report show that Alvarez was admitted to the
hospital for a vaginal hysterectomy because of “dysfunctional uterine
bleeding.”  Another doctor performed the surgery.  In the recovery room,
Alvarez had a drop in blood pressure, an increase in pulse, and no urine
output.  Another pulmonologist and an internal medicine specialist evaluated
Alvarez in the recovery room and gave her Hespan and IV fluids, but she did not
improve.  The pulmonologist diagnosed Alvarez with hemorrhagic shock and
recommended aggressive IV fluids, a transfusion, and pressor agents.  He also
“suggested” that Alvarez would need surgical or radiological intervention, but
he did not order or do anything to cause such intervention to occur.  The
report opines that appellant as well as the other doctors failed to meet the
standard of care, which was to recognize the emergency and see that
“appropriate intervention” was carried out.  When Alvarez was taken back to the
operating room, she died in surgery.

Regarding
Alvarez’s specific diagnosis, the report opines,

The suspicion of post
operative hemorrhage is made when there is an acute drop in hemoglobin out of
proportion to intraoperative blood loss, decreased or absent urine output,
increased pulse, and decreased blood pressure.  The diagnosis is made when the
patient does not respond to a fluid bolus.  When the diagnosis is made the
only avenue of treatment available is surgical exploration to control the
hemorrhage.  Continued blood loss and hypotension compromises cardiac
output, resulting in hemorrhagic shock, a much more difficult clinical
situation to treat and reverse.  Failure to treat this condition early in its
clinical course with surgery to stop the hemorrhage, increases the risk of a
fatal outcome, as seen in this case. . . .  [M]aintaining blood pressure
with the pressor agents exacerbates the hemorrhage much as squeezing a bag of
blood with a hole increases the speed of the discharge through the hole,
hastening, not slowing the blood loss.  Pressor agents are absolutely contraindicated
when there is a diagnosis of post-operative hemorrhage.  The only way to
increase the pressure and salvage the patient is to stop the leak.  No other
solution will work.  Physicians and nurses taking care of post operative
patients . . . in the ICU know this fact and the extreme risks involved to the
patient if it is not done.  It is inappropriate and below the standard of care
for physicians and nurses taking care of a patient in this situation to
continue to administer fluids, transfuse blood, and administer pressors without
having surgical intervention underway.

 

The standard of care
required both recognizing the emergency and seeing that appropriate surgical
intervention is carried out.  The delay in recognizing the emergent nature of .
. . Alvarez’s condition and in insisting that Dr. Allen or some other surgeon
effect a surgical repair was below the standard of care.  Further, this delay
was a proximate cause of . . . Alvarez’s death.  Proper standards of care
further prohibit the use of pressors as this exacerbates the problem. . . . 
[Appellant] failed to . . . insist that such surgery take place either by Dr.
Allen or by some other surgeon. . . .  [Appellant] continued to order
pressors.

 

. . .  The delay in
timely returning . . . Alvarez to surgery to repair the obvious bleed caused
her death.

 

[Emphasis
added.]

In
another section of the report, Dr. Tyuluman opines,

The standard of care
for [appellant], an internist and pulmonologist caring for a post-operative
patient like . . . Alvarez in the CCU, is to recognize the emergent and critical
post-operative bleed and to insist that Dr. Allen or some other surgeon take
her back to surgery in a timely fashion and repair it.  [Appellant] was also
aware of . . . Alvarez’s emergently critical condition.  He too took no steps
to make sure that Dr. Allen or some other surgeon take . . . Alvarez emergently
back to surgery to correct the obvious post-surgical bleed.  [Appellant] was
paged at 1945.  At 2010, he ordered continuation of Dopamine and Neosynephrine
and added Levophed.  He was again paged at 2015.  He was at the bedside at
2019.  He ordered bicarbonate for her acidosis.  By 2030, [appellant] noted
that . . . Alvarez would require “re-exploration”, but took no steps to make
sure that that happened within the next hour and a half.  This course of
conduct was negligence, contributed to the delay and was a proximate cause of .
. . Alvarez’s death.

 

[Emphasis added.]

 

          Finally, Dr. Tyuluman concludes by stating,

 

          The failure
of all defendants to provide surgery to control the hemorrhage, continuing to
administer pressor agents when contraindicated, failure to properly monitor
intraoperative blood loss, and failure to recognize the compromised status of
the patient during this process are proximate cause[s] of the death of Alvarez.

 

 

Appellant
contends that the expert report fails to explain why his delay in meeting the
articulated standard of care––ensuring that Alvarez be taken immediately to surgery––proximately
caused Alvarez’s death when several other doctors had already been treating her
for several hours before that. In his brief, appellant argues that the report
“improperly leaves the trial court to infer or guess that . . . Alvarez’s
outcome would have been different at the time [he] initially saw her, and
something occurred of medical significance between the time [appellant] first
saw . . . Alvarez at 20:19, and 20:42, when Dr. Allen [her surgeon] made the
decision to take her to surgery and repair the bleed.”

The
report states that Alvarez was taken to the PACU[2] at
1302 and was hypotensive[3] at
that time.  The expert opined that at 1503, Alvarez’s bleed was obvious and she
needed to be immediately returned to surgery. Dr. Allen decided to take Alvarez
back to surgery at 2042, but he did not actually take her back until 2200.  Although
appellant characterizes his treatment of Alvarez as being for only “a few
minutes” within the approximately nine hours Alvarez was treated postoperatively,
the timeline in the expert report shows that he was involved in her treatment
for over two hours before she was actually taken to surgery.

Moreover,
Dr. Tyuluman’s report also faults appellant for continuing to prescribe pressors
when they were “absolutely contraindicated,” and he explains that the use of
such pressors exacerbated the bleeding that Alvarez was already experiencing,
actively contributing to the worsening of her condition rather than passively
being involved in the delay.  Thus, according to Dr. Tyuluman’s report,
appellant’s entire “course of conduct” was a proximate cause of Alvarez’s death. 
Proximate cause need not be sole cause; one doctor’s actions can be part of a
chain of events that all combine to be a substantial factor in causing a
patient’s injury or death.  See, e.g., Presbyterian Cmty. Hosp. of
Denton v. Smith, 314 S.W.3d 508, 519 (Tex. App.––Fort Worth 2010, no pet.);
Patel v. Williams ex rel. Estate of Mitchell, 237 S.W.3d 901, 905–06 (Tex.
App.––Houston [1st Dist.] 2007, no pet.) (“While there are many links in this
chain of causation, we cannot conclude that Dr. Zeitlin’s report is
insufficient to fulfill the requirements of section 74.351.”).

Appellees
argue that this case is similar to Menefee v. Ohman, 323 S.W.3d 509 (Tex.
App.––Fort Worth 2010, no pet.).  In that case, Dr. Ohman was one of several
doctors who treated a sixteen-year-old girl who suffered brain injuries after
being given antipsychotic medication.  Id. at 515–16.  The expert opined
that each doctor in the chain proximately caused the girl’s injuries by failing
to prescribe anticonvulsant therapy; we held that the expert’s causation
opinion was sufficient under section 74.351.  Id. at 519–20.  Appellant
contends Menefee is inapposite because Dr. Ohman had provided care to
his patient for “hours,” but appellant treated Alvarez for only “a few
minutes.”  But this is a distinction without a difference.  As we have
explained, Dr. Tyuluman contends that appellant’s continued prescription of
pressors, which contributed to the bleed for almost two hours before Alvarez
actually went back to surgery, was a proximate cause of Alvarez’s death.  Thus,
contrary to appellant’s contentions, the expert report in this case is much
like the sufficient one in Menefee.

Appellant
is arguing, in effect, that for Dr. Tyuluman’s report to be sufficient under
section 74.351, he should have opined as to the exact moment surgical
intervention would have outweighed the effect of the continued use of
pressors.  But such detail is not required at this stage of the litigation.  See
Kelly v. Rendon, 255 S.W.3d 665, 677 n.6 (Tex. App.––Houston [14th Dist.]
2008, no pet.).  Dr. Tyuluman’s report was sufficient to inform appellant of the
specific conduct  that appellees contend was a proximate cause of Alvarez’s
death.  Whether that evidence is sufficient to actually prove causation is an
issue for trial.  See Palacios, 46 S.W.3d at 879.

We
overrule appellant’s two issues.

Conclusion

Having
overruled appellant’s two issues, we affirm the trial court’s order. [4]

 

 

 

TERRIE LIVINGSTON
CHIEF JUSTICE

 

PANEL: 
LIVINGSTON,
C.J.; GARDNER and WALKER, JJ.

 

DELIVERED: July 7, 2011 








 









          [1]See Tex. R. App. P. 47.4.





[2]Post-anesthesia care unit.





[3]Low blood pressure.





[4]This court’s November 30,
2010 order staying discovery in the trial court remains pending until
disposition of the motion for rehearing in appeal number 02-10-342-CV.