**Anil B. PATEL, M.D., Appellant**

v.

**George H. WILLIAMS, On Behalf of the ESTATE OF Frances M. MITCHELL and On Behalf of All Wrongful Death Beneficiaries, Appellee.**

No. 14–07–00328–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Nov. 6, 2007.

Ren Patrick Rigby, Wesley Nagorny, Lauren Gilmer Rigby, Houston, for appellants.

Beth S. Janicek, San Antonio, for appellees.

Panel consists of Chief Justice HEDGES, and Justices ANDERSON and SEYMORE.

## OPINION

CHARLES W. SEYMORE, Justice.

This appeal pertains to a health care liability suit brought by appellee, George H. Williams, on Behalf of the Estate of Frances M. Mitchell and on Behalf of all Wrongful Death Beneficiaries, against appellant, Dr. Anil B. Patel. The trial court denied appellant's motion to dismiss, and this interlocutory appeal followed. In his sole issue, appellant contends the trial court erred in denying his motion to dismiss because appellee's expert report was insufficient as a matter of law.[1]

1. Appellee sued Dr. Patel and Sugar Land Health Care, LP D/B/A Sugar Land Health Care Center, however, Sugar Land Health Care, LP did not challenge the sufficiency of appellee's expert report in the trial court. Therefore, this opinion pertains to Dr. Patel alone.

### I. BACKGROUND

On February 11, 2005, Frances Mitchell, who suffered from dementia related to Alzheimer's Disease, was hospitalized after she fractured and displaced her left hip. On March 8, 2005, Dr. Anil Patel discharged her to the Sugar Land Health Care Center where he would be Mitchell's treating physician. To treat Mitchell's dementia, Dr. Patel prescribed Risperdal, a psychotropic drug with side effects including restlessness or a need to keep moving. Dr. Patel continued the Risperdal treatment after George Williams, a family member of Mitchell's, withheld consent to the use of the drug.

While at the Sugar Land Health Care Center, Mitchell received nutrition through a gastrostomy tube. On March 27, 2005, nurses noted that Mitchell was very agitated and pulling on her gastrostomy tube, which she eventually dislodged. Sugar Land Health Care Center nurses improperly reinserted the tube. Mitchell suffered leakage of gastric contents into the peritoneum as a direct consequence of the improperly inserted gastrostomy tube. This leakage resulted in the formation of an abscess. Mitchell required multiple operations to address the abscess and infection stemming from the improperly inserted tube. She died on May 22, 2005. The death certificate identified the cause of death as small cut gangrene with the underlying cause of mesenteric artery thrombosis.

George Williams filed suit against Dr. Patel and Sugar Land Health Care Center asserting that their negligence and gross negligence resulted in Mitchell's death. Pursuant to section 74.351 of the Civil Practice and Remedies Code, Williams

served Dr. Michael Zeitlin's expert report on Dr. Patel and Sugar Land Health Care Center. Dr. Patel filed a motion to dismiss, contending Dr. Zeitlin's report was not sufficient to fulfill the requirements of section 74.351. The trial court denied the motion, and this appeal followed.

## II. ANALYSIS

In one issue, Dr. Patel contends Dr. Zeitlin's report failed to state the applicable standard of care and is conclusory and speculative regarding the element of causation. We disagree.

We review a trial court's ruling regarding the adequacy of an expert report for abuse of discretion. *Am. Transitional Care Ctrs. v. Palacios,* 46 S.W.3d 873, 877 (Tex.2001). A trial court commits an abuse of discretion if it acts in an arbitrary or unreasonable manner without reference to guiding rules or principles. *See Bowie Mem'l Hosp. v. Wright,* 79 S.W.3d 48, 52 (Tex.2002). We may not substitute our judgment for that of the trial court when reviewing matters committed to the trial court's discretion. *Walker v. Packer,* 827 S.W.2d 833, 839–40 (Tex.1992).

▮▮▮▮ Under section 74.351 of the Civil Practice and Remedies Code, health care liability claimants must provide an expert report to the defendant no later than 120 days after filing the original petition. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a) (Vernon Supp.2006). A defendant may file a motion challenging the adequacy of the report, and the trial court "shall grant" the motion only if it appears that the report does not represent a good faith effort to comply with the statutory definition of an expert report. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 74.351(a), (*l*) (Vernon Supp. 2006). In determining whether the report represents a good faith effort, the trial court's inquiry is limited to the four corners of the report, and no inferences may be drawn from information outside the re-

port. *See Palacios,* 46 S.W.3d at 878. An expert report is defined as a written report by an expert that provides a fair summary of the expert's opinions regarding: (1) the applicable standard of care; (2) the manner in which the care provided failed to meet that standard; and (3) the causal relationship between that failure and the injury, harm, or damages claimed. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(r)(6) (Vernon Supp.2006); *Palacios,* 46 S.W.3d at 878–79. In compliance with these standards, the expert report must incorporate enough information to fulfill two purposes: (1) the report must inform the defendant of the specific conduct the plaintiff has called into question; and (2) the report must provide a basis for the trial court to conclude the claims are meritorious. *Palacios,* 46 S.W.3d at 879. A report merely expressing the expert's conclusions about the standard of care, breach, and causation fails to fulfill these purposes. *Id.* The expert must explain the basis for his statements and must link his conclusions to the facts. *Wright,* 79 S.W.3d at 52. However, to avoid dismissal, a plaintiff need not present all the evidence necessary to litigate the merits of her case. *Palacios,* 46 S.W.3d at 879. The report may be informal in that the information need not fulfill the same requirements as the evidence offered in a summary-judgment proceeding or at trial. *Id.* Moreover, the expert is not required to express the causal relationship in terms of any "magical" words. *Wright,* 79 S.W.3d at 53.

### A. STANDARD OF CARE

▮▮▮▮ Dr. Patel first contends the report did not comply with section 74.351 because Dr. Zeitlin did not state the applicable standard of care. Although Dr. Zeitlin's report could have been more artfully written, we conclude it provided Dr. Patel with a fair summary of the standards of care

applicable to him. We acknowledge that Dr. Zeitlin did not segregate his statements regarding standards of care from the other section 74.351 elements. However, no particular format is required under section 74.351. The statute simply requires that the report provide a fair summary of the expert's opinion as to the applicable standard of care. *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.351(r)(6). Throughout the report, Dr. Zeitlin imbedded a number of standards of care directly applicable to Dr. Patel. First, Dr. Zeitlin stated, "[t]he standard of care requires the family to consent to the prescription of psychotropic drugs." This standard sets out a simple rule whereby a reasonable physician may not continue a course of treatment using psychotropic drugs if the patient's family fails to give its consent to the treatment. Additionally, Dr. Zeitlin stated, "Risperdal was not the appropriate drug for Ms. Mitchell. The FDA approved Risperdal to treat schizophrenia.... Risperdal was not approved by the FDA to treat dementia related to Alzheimers." Similar to statements of causation, there is nothing in section 74.351 requiring standards of care to be described using any specific terms, phrases, or magic words. *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.351(r)(6); *see also Wright,* 79 S.W.3d at 52 (stating an expert report need not contain certain magical words to satisfy section 74.351's causation requirement). Although Dr. Zeitlin's statement did not include any words or phrases such as "the standard of care is," this statement described standards of care under which a reasonable physician should not, as a general proposition, prescribe the wrong drug for his patients; nor should a reasonable physician prescribe the drug Risperdal, specifically, to treat dementia related to Alzheimer's Disease. This standard was applicable to Dr. Patel as Mitchell's treating physician.

To find an abuse of discretion, we must conclude the trial court acted in an arbitrary or unreasonable manner without reference to guiding rules or principles. *See Wright,* 79 S.W.3d at 52. Reasonable people may differ in determining what is required to provide a fair summary of the applicable standard of care, or any other section 74.351(r)(6) element. As such, unless the trial court's decision is arbitrary or unreasonable, we may not substitute our judgment for that of the trial court when reviewing matters committed to the trial court's discretion. *See Walker,* 827 S.W.2d at 839–40. While we might disagree as to whether Dr. Zeitlin's report provided a fair summary regarding each applicable standard of care, we cannot conclude the trial court's decision was arbitrary or unreasonable. Therefore, the trial court did not abuse its discretion in finding that appellee satisfied the standard of care requirement of section 74.351.

## B. CAUSATION

■ Dr. Patel further contends Dr. Zeitlin failed to comply with section 74.351 because his opinions regarding the causal relationship between Dr. Patel's breach of the standard of care and the alleged injuries were conclusory and speculative. We disagree. It is our considered opinion the trial court did not abuse its discretion in finding that Dr. Zeitlin sufficiently outlined the required causal facts.

In his report, Dr. Zeitlin presented a chain of events beginning with Dr. Patel's prescription of Risperdal to Mitchell and ending with her death. Dr. Zeitlin stated that Dr. Patel prescribed Risperdal to a patient for whom the drug was not appropriate and continued the medication after the family refused to consent to the treatment. He referenced nurses notes dated March 27, 2005 that described Mitchell as agitated and pulling on her gastrostomy

tube, behavior consistent with the side effects of Risperdal. Dr. Zeitlin noted, after Mitchell removed her gastrostomy tube, nurses, without consulting the treating physician, improperly re-inserted the tube. The nurses' actions caused formula to enter Mitchell's body but fail to enter her stomach. This formula leakage led to abscess and infection, requiring surgery. Although not stated with absolute clarity, Dr. Zeitlin concluded that Mitchell's death from small cut gangrene and mesenteric artery thrombosis resulted from either the earlier abscess and infection or complications from multiple surgeries. It is Dr. Zeitlin's opinion that Dr. Patel's decision to treat Mitchell's dementia with Risperdal began a chain of events ultimately culminating in Mitchell's death. While there are many links in this chain of causation, we cannot conclude that Dr. Zeitlin's report is insufficient to fulfill the requirements of section 74.351.

The two-fold purpose of an expert report under section 74.351 is to inform the defendant of the specific conduct the plaintiff has called into question, and to provide a basis for the trial court to conclude that the claims have merit. *See Palacios,* 46 S.W.3d at 878–79. Pursuant to this standard, we hold Dr. Zeitlin's report was sufficient to notify Dr. Patel regarding the specific conduct complained of, and provided a basis for the trial court to conclude the claims have potential merit. Therefore, we conclude the trial court acted within its discretion in finding that Dr. Zeitlin's report sufficiently addressed the element of causation.

Appellant's sole issue is overruled. Accordingly, the trial court's order signed March 29, 2007 is affirmed.