Reversed and Remanded and Memorandum Opinion filed August 21, 2008








Reversed and
Remanded and Memorandum
Opinion filed August 21, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00831-CV

____________

 

CHCA MAINLAND, L.P. D/B/A MAINLAND
MEDICAL CENTER,
Appellant

 

V.

 

BONNIE DICKIE, Appellee

 



 

On Appeal from the 10th
District Court

Galveston County, Texas

Trial Court Cause No. 06CV1400

 



 

M E M O R A N D U M   O P I N I O N

Appellee Bonnie Dickie sued appellant CHCA Mainland, L.P.
d/b/a Mainland Medical Center (ACHCA Mainland@) for alleged
medical malpractice.  In support of her claim, and pursuant to section
74.351(a) of the Civil Practice and Remedies Code, Dickie submitted the expert
report and curriculum vitae of Dr. David J. Hyman.  CHCA Mainland then filed a
motion to dismiss challenging the adequacy of Dr. Hyman=s expert report. 
The trial court denied the motion to dismiss, and CHCA Mainland filed this
interlocutory appeal.








We conclude that Dr. Hyman=s report and
curriculum vitae do not demonstrate that he is qualified to offer an expert
opinion.  In addition, Dr. Hyman=s report is
conclusory on the elements of breach of the applicable standard of care and
causation.  We therefore reverse the order of the trial court denying CHCA
Mainland=s motion to
dismiss, and remand to the trial court for consideration of whether Dickie is
entitled to a thirty-day extension under section 74.351(c) to cure the
deficiencies.

Factual
and Procedural Background

In her petition, Dickie alleged that she developed a
decubitus ulcer, or Apressure sore,@ during her
six-week hospitalization at Mainland Medical Center as a result of CHCA
Mainland=s negligence.  She
contends that CHCA Mainland was negligent in failing to (1) provide adequate
nutrition; (2) provide adequate hydration; (3) have Dickie reposition herself
every hour to avoid the development of pressure sores; and (4) use appropriate
seat cushions.  Dickie further alleged that Adecubitus ulcers
are considered preventable and the development of decubitus ulcers is evidence
of some form of neglect (nutrition, hydration, positioning, infection control
etc.).@

On April 10, 2007, Dickie filed a report completed by Dr.
David J. Hyman, a physician who is board-certified in internal medicine and has
been a professor at Baylor College of Medicine for over thirteen years.  Dr.
Hyman=s report related
the following facts and opinions:

Thank you for allowing me to review this case.  I am a Board Certified
Internist and am fully licensed in the State of Texas.  I have been both
practicing and teaching inpatient and outpatient medicine here for 17 years.  I
feel I am very much in position to comment on appropriate standards of care.








Ms. Dickie developed Decubitus
Ulcers during a hospitalization at Mainland Medical Center.  This is below the
standard of care.  Proper Nursing Care would include: (1) assess the patient
from head to toe, (2) document any potential problems including skin condition,
(3) use protection and padding to prevent tissue abrasion and prevent problems
with hydration, nutrition, and hygiene.  The skin should be inspected at least
once a day.  A patient should be repositioned every hour if unable to do it
themselves.  Mainland Medical Center did not meet these standards of care and
was negligent.  As a result the patient developed a Decubitus Ulcer that
required treatment.

CHCA Mainland then filed a motion to dismiss, challenging
the adequacy of Dr. Hyman=s report.  CHCA Mainland argued that Dr.
Hyman=s report did not
constitute an objective good-faith effort to comply with the requirements for
an expert report under Chapter 74; therefore, dismissal of Dickie=s claims was
warranted, because (1) the report was conclusory regarding CHCA Mainland=s breach of the
applicable standard of care and proximate causation; and (2) the report failed
to demonstrate that Dr. Hyman was qualified to render an expert opinion
regarding the issues in Dickie=s lawsuit.  The trial court denied the
motion to dismiss, and CHCA Mainland filed this interlocutory appeal under
section 51.014(a)(9) of the Civil Practice and Remedies Code.

Issues
on Appeal

In three issues, CHCA Mainland contends that Dr. Hyman=s report does not
constitute a good-faith effort to comply with the expert report requirements of
section 74.351, and therefore the trial court abused its discretion in denying
the motion to dismiss.  In its first issue, CHCA Mainland argues that Dickie
did not demonstrate that Dr. Hyman is qualified under section 74.401 to offer
an expert opinion in this case.  In its second and third issues, CHCA Mainland
asserts that Dr. Hyman=s report is conclusory on the elements of
proximate causation and breach of the applicable standard of care.  We analyze
CHCA Mainland=s issues in the order presented in its brief.[1]








Analysis
of CHCA Mainland=s Issues

I.        Standard
of Review and Applicable Law.

When a trial court rules on a defendant health care
provider=s motion to
dismiss a health care liability claim, we review the ruling for an abuse of
discretion. See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,
46 S.W.3d 873, 877B78 (Tex. 2001); Rittmer v. Garza,
65 S.W.3d 718, 721 (Tex. App.BBHouston [14th Dist.] 2001, no pet.).  We
apply the same standard of review to a trial court=s determination
that an expert is qualified to offer an expert opinion regarding the elements
of a plaintiff=s health care liability claim. See Mem=l Hermann Healthcare Sys. v. Burrell, 230 S.W.3d 755, 757 (Tex. App.CHouston [14th Dist.] 2007, no pet.) (citing Broders
v. Heise, 924 S.W.2d 148, 151B52 (Tex. 1996); Group
v. Vicento, 164 S.W.3d 724, 727 (Tex. App.CHouston [14th
Dist.] 2005, pet. denied)).

An abuse of discretion occurs when the trial court acts in
an unreasonable or arbitrary manner, without reference to any guiding rules or
principles. Walker v. Gutierrez, 111 S.W.3d 56, 62 (Tex. 2003).  A trial
court will be deemed to have acted arbitrarily and unreasonably if the trial
court could have reached only one decision, yet reached a different one. See
Teixeira v. Hall, 107 S.W.3d 805, 807 (Tex. App.BBTexarkana 2003, no
pet.).  To that end, a trial court abuses its discretion when it fails to
analyze or apply the law correctly. In re Sw. Bell Tel. Co., 226 S.W.3d
400, 403 (Tex. 2007) (citing In re Kuntz, 124 S.W.3d 179, 181 (Tex.
2003)).  However, to the extent resolution of the issues presented requires
interpretation of the statute, we review the ruling under a de novo standard. See
Buck v. Blum, 130 S.W.3d 285, 290 (Tex. App.CHouston [14th
Dist.] 2004, no pet).








A plaintiff asserting a health care liability claim must
provide each defendant physician and health care provider with an expert report
no later than the 120th day after filing suit. See Tex. Civ. Prac. & Rem. Code _ 74.351(a).[2] 
AExpert report@ is statutorily
defined as:

[A] written report by an expert
that provides a fair summary of the expert=s opinions as of
the date of the report regarding applicable standards of care, the manner in
which the care rendered by the physician or health care provider failed to meet
the standards, and the causal relationship between that failure and the injury,
harm, or damages claimed.

Id.
_ 74.351(r)(6).  If
a plaintiff furnishes the required report within the time permitted, the
defendant may file a motion challenging the adequacy of the report. See id. _ 74.351(b), (l).

With respect to such a motion, Chapter 74 provides that the
trial court Ashall grant a motion challenging the adequacy of an
expert report only if it appears to the court, after hearing, that the report
does not represent an objective good faith effort to comply with the definition
of an expert report in Subsection (r)(6).@ Id. _ 74.351(l).  When
determining whether the expert report represents a good-faith effort, the trial
court=s inquiry is
limited to the four corners of the report itself, and inferences are not
permitted. See Bowie Mem=l Hosp. v. Wright, 79 S.W.3d 48, 53
(Tex. 2002) (citing Palacios, 46 S.W.3d at 878); see also Patel v.
Williams ex rel. Estate of Mitchell, 237 S.W.3d 901, 904 (Tex. App.CHouston [14th
Dist.] 2007, no pet.).








To constitute a good-faith effort, the report must discuss
the standard of care, breach, and causation with sufficient specificity (1) to
inform the defendant of the specific conduct the plaintiff has called into
question and (2) to provide a basis for the trial court to conclude that the
claims have merit. See Palacios, 46 S.W.3d at 879.  Although an expert
report need not marshal and present all of the plaintiff=s proof, a report
that omits any of the elements required by the statute does not constitute a
good-faith effort. Id. at 878B79.  Moreover, an
expert report by a person who is not qualified to testify under section 74.402
regarding the standard of care does not represent an objective good-faith
effort to comply with the definition of an expert report in section 74.351. See
Tex. Civ. Prac. & Rem. Code _ 74.351(l),
(r)(5)B(6); see also
Foster v. Zavala, 214 S.W.3d 106, 116 (Tex. App.CEastland 2006,
pet. denied) (citing In re Windisch, 138 S.W.3d 507, 511 (Tex. App.CAmarillo 2004, orig. proceeding)
(interpreting predecessor statute to section 74.351)).

II.       Dr.
Hyman Has Not Established That He Is Qualified to Offer an Expert Opinion in
This Case.

In its first issue, CHCA Mainland argues that Dickie did
not demonstrate that Dr. Hyman is qualified to offer an expert opinion in this
case.[3] 
Specifically, CHCA Mainland asserts that Dr. Hyman=s report and curriculum
vitae do not show that he has any experience in the care and treatment of
decubitus ulcers, or any specialized knowledge about the cause of that
particular medical condition.  CHCA Mainland further asserts that Dr. Hyman=s report fails to
explain how his knowledge, skill, experience, training, and education as an
internist qualified him to render an expert opinion on causation and treatment
of decubitus ulcers.

As explained below, we agree with CHCA Mainland that Dr.
Hyman=s expert report
and curriculum vitae do not demonstrate that he is qualified to offer an expert
opinion in this case.








A.      Qualifications
to Offer an Expert Opinion

An expert providing opinion testimony regarding whether a
health care provider departed from the accepted standards of health care must
satisfy the requirements set forth in section 74.402. Tex. Civ. Prac. & Rem. Code _ 74.351(r)(5)(B). 
That section provides:

(b) In a suit involving a health care liability claim against a health
care provider, a person may qualify as an expert witness on the issue of
whether the health care provider departed from accepted standards of care only
if the person:

(1) is practicing health care in a field of practice
that involves the same type of care or treatment as that delivered by the
defendant health care provider, if the defendant health care provider is an
individual, at the time the testimony is given or was practicing that type of
health care at the time the claim arose;

(2) has knowledge of accepted standards of care for
health care providers for the diagnosis, care, or treatment of the illness,
injury, or condition involved in the claim; and

(3) is qualified
on the basis of training or experience to offer an expert opinion regarding
those accepted standards of health care.

Id.
_ 74.402(b).  In
determining whether a particular witness is qualified Aon the basis of
training or experience,@ the trial court must consider whether
that witness (1) is certified by one or more state licensing agencies or a
national professional certifying agency, or has Aother substantial
training or experience@ in an area of health care relevant to the
claim; and (2) is Aactively practicing health care@ in rendering
health care services relevant to the claim. Id. _ 74.402(c)(1)B(2).

CHCA Mainland apparently challenges Dr. Hyman=s qualifications
under sections 74.402(b)(2) and (b)(3).  Before we turn to CHCA Mainland=s specific
arguments, we will examine the contents of Dr. Hyman=s report and
curriculum vitae.








B.      We
Consider the Contents of Both Dr. Hyman=s Report and His
Curriculum Vitae

In its brief, CHCA
Mainland suggests that our analysis of Dr. Hyman=s qualifications
to offer an expert opinion in this case is limited to the four corners of his report. 
Contrary to CHCA Mainland=s contention, our analysis of the
qualifications of an expert under section 74.351 is limited to the four corners
of the expert=s report and curriculum vitae. See Burrell, 230 S.W.3d at 758 (citing Palacios,
46 S.W.3d at 878); see also Windisch, 138 S.W.3d at 511.  Accordingly,
we will consider the contents of both documents.  

Here, Dr. Hyman=s report and
curriculum vitae reflect that he is licensed to practice medicine in the state
of Texas, is board certified in Internal Medicine, and has been both practicing
and teaching inpatient and outpatient medicine in Texas for over seventeen
years.  At the time of the report, Dr. Hyman was an associate professor of
medicine in the Section of General Internal Medicine at the Baylor College of
Medicine in Houston, as well as an associate professor of Family and Community
Medicine there.  He formerly served as the Chief of the General Medicine
Section at Baylor College of Medicine in late 1996 and early 1997, and has
authored one article on abused and neglected elders treated by an
interdisciplinary geriatric team that was published in the Journal of Elder
Abuse and Neglect.  In addition, Dr. Hyman has participated in three
presentations to Meetings of the American Geriatric Society:  (1) ACancer care for
the elderly in a public hospital: A descriptive survey@; (2) ACaring for the
frail elderly outpatient in a public system@; and (3) AGeriatric
emergency care in an urban hospital system.@  Finally, Dr.
Hyman=s curriculum vitae
indicates that he is involved in clinical supervision at Ben Taub Hospital in Ainpatient
attending@ three months per year, he teaches an evidence-based
medicine seminar in the Family Medicine rotation at Baylor College of Medicine,
and he is the course director of a APrinciples of
Prevention@ course for physician assistants at Baylor College of
Medicine.








C.      The Trial
Court Abused Its Discretion in Concluding That Dr. Hyman=s Report and
Curriculum Vitae Established That He Is Qualified to Offer an Expert Opinion in
this Case

1.       Dr. Hyman=s Report and
Curriculum Vitae Do Not Show That He Has Any Experience in the Care and
Treatment of Decubitus Ulcers, or Any Specialized Knowledge About the Cause of
That Particular Medical Condition

CHCA Mainland first argues that Dr. Hyman=s report and
curriculum vitae do not show that he has any experience in the care and
treatment of decubitus ulcers, or any specialized knowledge about the cause of
that particular medical condition.  We agree.  The trial court=s analysis of Dr.
Hyman=s qualifications
was limited to the four corners of his report and curriculum vitae, and neither
document demonstrates that he has the requisite experience with decubitus
ulcers or knowledge of the applicable standard of care that would qualify him
to offer an expert opinion in this case. See Burrell, 230 S.W.3d at 758.








First, it is not evident from the four corners of either
document that Dr. Hyman has any experience in the treatment and prevention of
decubitus ulcers.  While his report and curriculum vitae indicate that he (1)
is board certified in internal medicine, (2) has seventeen years= experience in
practicing and teaching both inpatient and outpatient medicine, (3) has
experience in an inpatient hospital setting, where he supervises Ainpatient
attending@ three months per year, and (4) is course director of
a preventive medicine course for physician assistants, Dr. Hyman failed to set
forth his experience with decubitus ulcers anywhere in his report or curriculum
vitae.  While Dr. Hyman might have acquired experience with decubitus ulcers in
his seventeen years of practice and teachingCthrough, for
example, treating patients with decubitus ulcers, or training medical personnel
on the treatment and prevention of that particular medical conditionCthe contents of
his report and curriculum vitae do not demonstrate that he has any experience
whatsoever in diagnosing and caring for patients with decubitus ulcers.[4]

Nor do Dr. Hyman=s report and
curriculum vitae demonstrate that he has the  requisite knowledge of the
accepted standard of care for the diagnosis, care, or treatment of decubitus
ulcers.  Dr. Hyman vaguely references his familiarity with the applicable
standard of care  through his conclusory statements in the initial paragraph of
his report, AI am a Board Certified Internist and am fully licensed
in the State of Texas.  I have been both practicing and teaching inpatient and
outpatient medicine here for 17 years.  I feel I am very much in position to
comment on appropriate standards of care.@  Notably, Dr.
Hyman never states anywhere in his report that he has any familiarity whatsoever
with the standard of care as it pertains to the treatment and prevention of
decubitus ulcers, and his curriculum vitae does not present any basis for the
trial court to have concluded that he has the requisite knowledge of the
applicable standard of care.[5]








In short, while it might be reasonable to infer from the
contents of these documents that Dr. Hyman might have acquired
experience in the treatment and care of decubitus ulcers in his seventeen years
of practice and teaching, or that, through his training of physician
assistants, he might have knowledge of the standard of care applicable
to the diagnosis, care or treatment of decubitus ulcers, the trial court is not
allowed to make any inferences regarding Dr. Hyman=s qualifications
to offer an expert opinion in this case. See Wright, 79 S.W.3d at 53; Patel,
237 S.W.3d at 904.

2.       Dr. Hyman=s Report Fails to
Explain How His Knowledge, Skill, Experience, Training, and Education as an
Internist Qualified Him to Offer an Expert Opinion in This Case

CHCA Mainland further argues that Dr. Hyman=s report fails to
explain how his knowledge, skill, experience, training, and education as an
internist qualified him to render an expert opinion in this case regarding the
statutory requisites of Dickie=s claim.  Again, we agree. In his report,
Dr. Hyman failed to link his experience in his medical specialtyCinternal medicineCto decubitus
ulcers.  Although his report indicates that he has seventeen years= experience in
practicing and teaching inpatient and outpatient medicine, and that he is board
certified in Internal Medicine, as noted above, he fails to state in his report
that over the course of his career in internal medicine that he has either
treated patients with decubitus ulcers, or that he has trained nurses,
physician assistants, or other medical personnel in the proper techniques to
treat and prevent decubitus ulcers.[6] 
And, the contents of Dr. Hyman=s curriculum vitae did not provide an
independent basis for the trial court to conclude that Dr. Hyman=s background in
internal medicine furnished him any relevant experience with the treatment or
prevention of decubitus ulcers, or any knowledge of the applicable standard of
care.  Again, while it might be reasonable to infer from Dr. Hyman=s skill,
experience, training, and education as an internist that he has knowledge of
the standard of care for the treatment and prevention of decubitus ulcers, the
trial court was not permitted to make such an inference. See Wright, 79
S.W.3d at 53; Patel, 237 S.W.3d at 904.








          Under
section 74.402(b)(2), Dickie had the burden to demonstrate that Dr. Hyman has
knowledge of the accepted standards of care for the diagnosis, care, or
treatment of decubitus ulcers. See Tex.
Civ. Prac. & Rem. Code _ 74.402(b)(2).  Because Dr. Hyman=s report and
curriculum vitae failed to demonstrate that he had any knowledge of the
standard of care applicable to the treatment and prevention of decubitus
ulcers, we conclude that his report and curriculum vitae do not satisfy the
requirements of section 74.402(b)(2).  We next examine the requirements of
section 74.402(b)(3).

3.       Dr. Hyman
Has Not Established That He Is Qualified on the Basis of Training or Experience
to Offer an Expert Opinion in This Case

Under section 74.402(b)(3), Dickie had the burden to
demonstrate that Dr. Hyman is qualified on the basis of training or experience
to offer an expert opinion regarding the accepted standards of care for the
diagnosis, care, or treatment of decubitus ulcers. See Tex. Civ. Prac. & Rem. Code _ 74.402(b)(3).  To
determine whether Dr. Hyman is qualified under this section, we consider
whether Dr. Hyman is (1) certified by a licensing agency or has substantial
experience relevant to the claim; and (2) whether he is actively practicing
health care in rendering health care services relevant to the claim. See id.
_ 74.402(c)(1)B(2); see also
Burrell, 230 S.W.3d at 760.








Dr. Hyman=s report and curriculum vitae indicate
that he is board certified in internal medicine, that he has seventeen years= experience in
practicing and teaching inpatient and outpatient medicine, that he supervises Ainpatient
attending@ at Ben Taub Hospital, and that he instructs physician
assistants on preventive medicine.  Although internal medicine is an area of
health care with potential relevance to Dickie=s claimCsuch that Dr.
Hyman=s board
certification in that specialty would satisfy the requirements of section
74.402(c)(1)Cneither Dr. Hyman=s report nor his
curriculum vitae demonstrates that his background in internal medicine
furnished him any relevant experience with the treatment or prevention of
decubitus ulcers, or any knowledge of the applicable standard of care.  And,
Dr. Hyman did not make any attempt in his report to explain that (1) internal
medicine is an area of health care relevant to Dickie=s claim; or (2)
his seventeen years of experience in practicing and teaching inpatient and
outpatient medicine is in an area relevant to Dickie=s claim.  In fact,
as we explained above, Dr. Hyman failed to state anywhere in his report that he
has either trained personnel on the prevention and treatment of decubitus
ulcers, or that he has treated patients with decubitus ulcers over the course
of his practice as a doctor of internal medicine. Furthermore, we have already
concluded that Dr. Hyman=s report did not sufficiently explain how
his knowledge, skill, experience, training, and education as an internist
qualified him to render an expert opinion in this case.

Based on the contents of Dr. Hyman=s report and
curriculum vitae, we cannot conclude that Dr. Hyman=s board certification
in internal medicine is in an area of health care relevant to Dickie=s claim, or that
he has substantial training or experience in an area of health care relevant to
Dickie=s claim.  Thus,
Dr. Hyman was not shown to be qualified under section 74.402(c)(1), and
therefore his report and curriculum vitae do not satisfy the requirements of
section 74.402(b)(3).[7]
See Tex. Civ. Prac. & Rem.
Code _ 74.402(b)(3), (c)(1).  

4.       The AGood Reason@ Exception of
Section 74.402(d) Is Not Applicable Here

In a final attempt to avoid dismissal of her claim, Dickie
asserts that the trial court could have concluded that Dr. Hyman is qualified
to offer an expert opinion in this case under the Agood reason@ exception of
section 74.402(d).  That provision provides:








The court shall apply the criteria
specified in Subsections (a), (b), and (c) in determining whether an expert is
qualified to offer expert testimony on the issue of whether the defendant
health care provider departed from accepted standards of health care but may
depart from those criteria if, under the circumstances, the court determines
that there is good reason to admit the expert=s testimony.  The
court shall state on the record the reason for admitting the testimony if the
court departs from the criteria.

Tex. Civ. Prac. & Rem. Code _ 74.402(d). 
However, neither the transcript of the hearing on CHCA Mainland=s motion to
dismiss nor the trial court=s order denying the motion to dismiss
states that the trial court departed from the criteria of section 74.402(a)B(c).  Accordingly,
the Agood reason@ exception of
section 74.402(d) is not applicable to the facts of this case. See id. (AThe court shall
state on the record the reason for admitting the testimony if the court departs
from the criteria.@); see also Group, 164 S.W.3d at
729 (noting that the Agood reason@ exception of
section 74.402(d) was not applicable because the order denying the defendant
physician=s motion to dismiss did not state that the trial court
departed from the criteria of section 74.402); cf. Packard v. Guerra,
252 S.W.3d 511, 529B32 (Tex. App.CHouston [14th
Dist.] 2008, pet. filed) (concluding that the trial court properly applied
section 74.402(d) when it stated on the record the reason for resorting to the Agood reason@ exception).

From the foregoing, we conclude that Dr. Hyman=s report and
curriculum vitae do not demonstrate that he is qualified to offer an expert
opinion in this case.  The trial court abused its discretion in concluding
otherwise.  We therefore sustain CHCA Mainland=s first issue.

III.      Dr.
Hyman=s Report is Conclusory on the Elements of
Proximate Causation and Breach of the Applicable Standard of Care.








In its second and third issues, CHCA Mainland contends that
Dr. Hyman=s expert report is conclusory on the elements of
proximate causation and breach of the applicable standard of care. 
Specifically, CHCA Mainland asserts that an expert report must explain the
basis for the expert=s conclusions, and link the conclusions to
the facts of the case.  CHCA Mainland argues that Dr. Hyman=s report is
deficient because it does not provide any explanation for his conclusion, AAs a result the
patient developed a decubitus ulcer that required treatment.@  CHCA Mainland
further asserts that an expert report must include Aspecific
information about what the defendant should have done differently,@ and argues that
Dr. Hyman=s report is deficient because it does not include
specific factual allegations setting forth the actual conduct of the nurses that
is being called into question.  Again, we agree with CHCA Mainland.

A.      Expert Reports Must Contain
More Than Conclusory Statements  Regarding Breach of the Applicable Standard of
Care and Causation

Not only must the expert report and curriculum vitae
demonstrate that the expert is qualified to offer an expert opinion in the
case, the report must also contain a discussion of the standard of care,
breach, and causation with sufficient specificity (1) to inform the defendant
of the conduct the plaintiff has called into question and (2) to provide a
basis for the trial court to conclude that the claims have merit. See
Palacios, 46 S.W.3d at 879.  A report that merely states the expert=s conclusions
about the standard of care, breach, and causation does not fulfill these two
purposes. Palacios, 46 S.W.3d at 879; see Wright, 79
S.W.3d at 52B53.  Rather, the expert must explain the basis of his
statements to link his conclusions to the facts. Wright, 79 S.W.3d at 52
(citing Earle v. Ratliff, 998 S.W.2d 882, 890 (Tex. 1999)); Patel,
237 S.W.3d at 904.

B.      Dr. Hyman=s Report Fails to
Explain the Basis of His Statements to Link His Conclusions to the Facts

Here, the parties do not dispute that Dr. Hyman=s report fairly
summarizes the alleged standard of care owed to Dickie. See Tex. Civ. Prac. & Rem. Code _ 74.351(r)(6). 
CHCA Mainland only contests whether the report fairly summarizes the manner in
which it allegedly breached the standard of care, and the causal relationship
between its alleged breach and Dickie=s injury.








Dr. Hyman=s report contains only one statement
regarding CHCA Mainland=s alleged breach of the standard of care
owed to Dickie:  AMainland Medical Center did not meet these
standards of care and was negligent.@  It does not
include specific factual allegations setting forth the conduct that Dickie has
called into question.  In fact, the report does not discuss at all what actions
were actually taken by CHCA Mainland in Dickie=s treatment, much
less what actions it failed to take.  Identifying whether the standard of care has
been breached cannot be determined absent specific information about what
should have been done differently. Palacios, 46 S.W.3d at 880. 
It is not sufficient for an expert to simply state that he knows the standard
of care and conclude that it was not met. See id.  Thus, Dr. Hyman=s report does not
fairly summarize the manner in which CHCA Mainland allegedly breached the
standard of care owed to Dickie. See id.; Hardy v. Marsh, 170
S.W.3d 865, 869B70 (Tex. App.CTexarkana 2005, no
pet.).

Nor does Dr. Hyman=s report provide a
fair summary of the causal relationship between CHCA Mainland=s alleged breach
and Dickie=s injury.  Dr. Hyman=s report contains
only one statement regarding causation:  AAs a result the
patient developed a Decubitus Ulcer that required treatment.@  Dr. Hyman=s report does not
contain any causal facts, much less explain how CHCA Mainland=s conduct caused
injury to Dickie. See Wright, 79 S.W.3d at 53; cf. Patel, 237
S.W.3d at 905B06 (concluding expert report not conclusory on element
of causation; report sufficiently outlined required causal facts, presenting
chain of events that ultimately culminating in patient=s death). 
Instead, the report merely states Dr. Hyman=s conclusion on
causation.  This is insufficient. See Palacios, 46 S.W.3d at 879; see
also Wright, 79 S.W.3d at 52B53 (concluding
expert report conclusory on element of causation; report merely stated expert=s conclusion on
causation, and did not provide information linking defendant=s actions to
patient=s injuries); Longino
v. Crosswhite, 183 S.W.3d 913, 918 (Tex. App.CTexarkana 2006, no
pet.) (same); Costello v. Christus Santa Rosa Health Care Corp., 141
S.W.3d 245, 249 (Tex. App.CSan Antonio 2004, no pet.) (same);
Lopez v. Montemayor, 131 S.W.3d 54, 59B60 (Tex. App.CSan Antonio 2003,
pet. denied) (same); Barko v. Genzel, 123 S.W.3d 457, 460B61 (Tex. App.CEastland 2003, no
pet.) (same).








Therefore, we conclude that Dr. Hyman=s report is
conclusory on the elements of breach of the applicable standard of care and
causation.  The trial court abused its discretion in concluding otherwise.  We
sustain CHCA Mainland=s second and third issues.

IV.      We Remand
to the Trial Court to Consider Whether Granting a Thirty-Day Extension Under
Section 74.351(c) is Appropriate.

Section 74.351(c) affords the trial court discretion to
grant claimants one thirty-day extension to cure any deficiencies in an expert
report. See Tex. Civ. Prac. &
Rem. Code _ 74.351(c).  Because the trial court denied CHCA
Mainland=s motion to
dismiss, it did not have the opportunity to consider whether Dickie is entitled
to a thirty-day extension to cure deficiencies in Dr. Hyman=s report.  We
therefore remand the case for the trial court to exercise its discretion under
section 74.351(c).

Conclusion

For the foregoing reasons, we hold that the trial court
abused its discretion in concluding (1) Dr. Hyman=s report and
curriculum vitae established that he is qualified to offer an expert opinion in
this case; and (2) Dr. Hyman=s report is not conclusory on the elements
of breach of the applicable standard of care and causation.  We therefore
reverse the order of the trial court denying CHCA Mainland=s motion to
dismiss, and remand to the trial court for consideration of whether Dickie is
entitled to a thirty-day extension under section 74.351(c) to cure the
deficiencies.

 

 

/s/      Wanda McKee Fowler

Justice

 

 

Judgment rendered
and Memorandum Opinion filed August 21, 2008.

Panel consists of
Justices Fowler, Frost, and Seymore.









[1]  In her brief, Dickie asserts seven cross-points
challenging the constitutionality of the expert report requirement of section
74.351.  However, Dickie did not raise any of these arguments in her response
to CHCA=s motion to dismiss, or at the hearing on the motion
to dismiss.  Because Dickie failed to assert these arguments in the trial court
below, we do not consider them here. See Tex. R. App. P. 33.1(a); see also Dreyer v. Greene,
871 S.W.2d 697, 697 (Tex. 1993) (stating that constitutional arguments must be
asserted in the trial court in order to be raised on appeal); Swink v. Alesi,
999 S.W.2d 107, 110 (Tex. App.CHouston [14th
Dist.] 1999, no pet.) (concluding that appellees had waived cross-point on
appeal by failing to raise argument in the trial court).  Dickie=s cross-points are waived.

 





[2]  Because Dickie=s
cause of action accrued before September 1, 2005, the former version of section
74.351(a) applies. See Act of May 18, 2005, 79th Leg., R.S., ch. 635, _ 2, 2005 Tex. Gen. Laws 1590, 1590.  That version
stated that Aa claimant shall, not later than the 120th day after
the date the claim was filed, serve on each party or the party=s attorney one or more expert reports, with a
curriculum vitae of each expert listed in the report . . . .@ See id. _ 1 (emphasis
added).  The current version of section 74.351(a) states that Aa claimant shall, not later than the 120th day after
the date the original petition was filed, serve on each party or the
party=s attorney one or more expert reports, with a curriculum
vitae of each expert listed in the report . . . .@ See Tex. Civ. Prac.
& Rem. Code _ 74.351(a) (emphasis added).





[3]  In its brief, CHCA Mainland argues that A[Dickie] did not show that Dr. Hyman had the necessary
qualifications as an expert under Sections 74.351(r)(5) and 74.401(a).@  While CHCA Mainland is correct in its assertion that
Dickie has the burden to demonstrate that Dr. Hyman is qualified to offer an
expert opinion on the elements of her claim, section 74.401 is applicable only
to health care liability claims asserted against physicians. See Burrell,
230 S.W.3d at 757 (A[The plaintiff], as proponent of the expert, has the
burden to show that the expert is qualified and the expert report satisfies the
statutory requirements.@); see also Tex.
Civ. Prac. & Rem. Code _ 74.401 (AQualifications of Expert Witness in Suit Against
Physician@).  Because Dickie has sued a health care providerCand not a physicianCwe
apply the analogous provisions of section 74.402 instead. See id. _ 74.402 (AQualifications
of Expert Witness in Suit Against Health Care Provider@).





[4]  Cf. Burrell,
230 S.W.3d at 759 (concluding that expert report was not conclusory and that it
sufficiently set forth the expert=s experience with decubitus ulcers, where expert report
provided that expert was Afamiliar with the standard of care
as it pertains to prevention and treatment of decubitus ulcers,@ that he had Aexperience in instructing nurses
and other personnel in the proper techniques to prevent decubitus ulcers,@ and that he had Atreated patients with decubitus
ulcers over the course of [his] practice as an infectious disease internist and
occupational doctor@).





[5]  Cf. Burrell,
230 S.W.3d at 760 (concluding that expert report sufficiently demonstrated
expert=s knowledge of the standard of care
applicable to the prevention and treatment of decubitus ulcers, where expert stated
in his report that he was familiar with the standard of care as it pertains to
the prevention and treatment of decubitus ulcers); Group, 164 S.W.3d at 734 (holding a doctor=s statement that he has knowledge of the accepted
standard of care for the injury or illness at issue satisfies section
74.402(b)(2)).





[6]  Cf. Burrell,
230 S.W.3d at 760 (concluding that expert report sufficiently demonstrated
expert=s knowledge of decubitus ulcers,
where expert linked his experience in his medical specialitiesCinternal medicine, occupational
medicine, and infectious diseaseCto decubitus ulcers by stating that, over the course of his
career in each of these specialties, he treated patients with decubitus ulcers
and trained nurses and other medical personnel in the proper techniques to
prevent that medical condition).





[7]  Cf. Burrell,
230 S.W.3d at 760B61 (concluding that expert had
substantial training or experience in an area of health care relevant to the
plaintiff=s claim, and was therefore
qualified under section 74.402(c)(1), where expert report explained that expert
had trained personnel on the prevention and treatment of decubitus ulcers and
treated patients with decubitus ulcers over the course of his practice as a
doctor of internal medicine, occupational medicine, and infectious disease, and
expert=s curriculum vitae indicated that
expert was board eligible in infectious disease, a fellow in infectious
disease, and had Arelevant teaching experience@).