COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                                NO.  2-09-350-CV

 

 

BURT EUGENE HYDE,
M.D.                                                              APPELLANT

 

                                                             V.

 

DOROTHY MENEFEE,
INDIVIDUALLY                                               APPELLEES

AND
AS NEXT FRIEND OF EVOLLA TUTT, 

AND
EVOLLA TUTT

 

                                                       ------------

 

               FROM
THE 67TH DISTRICT COURT OF TARRANT COUNTY

 

                                                       ------------

                                      MEMORANDUM
OPINION[1]

                                                       ------------

I. 
Introduction

In a
single issue, Appellant Burt Eugene Hyde, M.D. brings this interlocutory appeal
from the denial of his motion to dismiss the health care liability claim filed
against him by Appellees Dorothy Menefee, individually and as next friend of
Evolla Tutt and Evolla Tutt .  See
Tex. Civ. Prac. & Rem. Code Ann. '
51.014(a)(9) (Vernon 2008).  We affirm.








II. 
Factual and Procedural History

On
February 25, 2007, Appellee Dorothy Menefee brought her sixteen‑year‑old
daughter, Evolla Tutt, to Millwood Hospital, a psychiatric facility, for
treatment of a major depressive disorder with psychosis.  Tutt had previously been diagnosed with
Schizoaffective Disorder, and she had been suffering from increased depression
and anxiety, including auditory hallucinations, for two weeks. 

Dr.
Hyde, a general practitioner, was the first physician to examine Tutt at
Millwood Hospital; he noted an admission diagnosis of major depressive disorder
with psychosis.  At the time, Tutt was
taking a combination of medications, including Seroquel (an antipsychotic),
Concerta (an amphetamine used for treatment of attention-deficit disorder), and
Zoloft (an antidepressant).  Dr. Hyde
ordered the continuation of Tutt=s
current medications and the administration of a combination of medication,
including Haldol (an antipsychotic), Ativan (an anticonvulsant), and Benadryl,[2]
as needed if Tutt became Aagitated or very upset.@  Dr. Hyde did not see Tutt again or have any
further involvement in her care. 








After
being admitted to Millwood, Tutt became the patient of Dr. Tarakumar Reddy,
M.D.  Dr. Reddy entered new orders
discontinuing the Concerta, increasing the Zoloft and Seroquel dosages, and
leaving in place Dr. Hyde=s order for the Haldol
cocktail.  Tutt was not given the Haldol
cocktail prior to the entry of Dr. Reddy=s
February 25 orders, but she did receive three doses of the Haldol cocktail on
February 26.

On
February 28, Tutt was transferred from Millwood to the emergency room at
Arlington Memorial Hospital.  At the time
of admission, Tutt was described as drooling, non‑verbal, and
trembling.  Several hours later, Menefee
took Tutt by private car to North Hills Hospital where Tutt remained a patient
until March 12.  During that time, one of
the North Hills doctors noted a possible diagnosis of Neuroleptic Malignant
Syndrome (ANMS@).  Menefee alleges that Tutt=s
NMS caused seizures between March 4 and March 11 that resulted in Asubstantial
brain damage and permanent, debilitating physical and mental impairment.@  Tutt was transferred to Children=s
Medical Center in Dallas on March 12 and was discharged from there in June. 

Menefee
and Tutt sued thirty defendants, including Dr. Hyde, for negligence and served
Dr. J. Boswell Tabler=s expert report with their
original petition.  Dr. Hyde objected to
the expert report=s sufficiency and moved to
dismiss Menefee and Tutt=s claim under civil practice
and remedies code section 74.351.  After
a hearing, the trial court denied Dr. Hyde=s
motion to dismiss, and this interlocutory appeal followed.

III. 
Expert Report








In
his sole issue, Dr. Hyde argues that the trial court erred by denying his
motion to dismiss.  Specifically, Dr.
Hyde argues that Dr. Tabler=s
expert report does not satisfy the requirements of civil practice and remedies
code section 74.351 because it fails to establish a discernible standard of
care applicable to Dr. Hyde, fails to set forth a breach of that standard Ain
anything but a conclusory manner,@ and
fails to establish a causal link between Dr. Hyde=s
alleged misconduct and the harm Tutt allegedly suffered. 

A.  Standard of Review

A
trial court=s
ruling concerning an expert report under section 74.351 (formerly article
4590i, section 13.01) of the Medical Liability and Insurance Act is reviewable
under the abuse of discretion standard.  See
Tex. Civ. Prac. & Rem. Code Ann. '
74.351 (Vernon Supp. 2009); Bowie Mem=l
Hosp. v. Wright, 79 S.W.3d 48, 52 (Tex. 2002); Am.
Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d 873, 875 (Tex.
2001).  To determine whether a trial
court abused its discretion, we must decide whether the trial court acted
without reference to any guiding rules or principles; in other words, we must
decide whether the act was arbitrary or unreasonable.  Cire v. Cummings, 134 S.W.3d 835, 838B39
(Tex. 2004).  An appellate court cannot
conclude that a trial court abused its discretion merely because the appellate
court would have ruled differently in the same circumstances.  Bowie Mem=l
Hosp., 79 S.W.3d at 52; E.I. du Pont de Nemours & Co.
v. Robinson, 923 S.W.2d 549, 558 (Tex. 1995).

B.  Applicable Law








A
health care liability claimant must serve an expert report on each defendant no
later than the 120th day after the claim is filed.  See Tex. Civ. Prac. & Rem. Code Ann.
' 74.351(a).  A defendant may challenge the adequacy of a
report by filing a motion to dismiss, and the trial court must grant the motion
to dismiss if it finds, after a hearing, that Athe
report does not represent an objective good faith effort to comply with the
definition of an expert report@ in
the statute.  Id. '
74.351(l).  While the expert
report Aneed
not marshal all of the plaintiff=s
proof,@ it
must provide a fair summary of the expert=s
opinions as to the Aapplicable standard[ ] of
care, the manner in which the care rendered by the physician or health care
provider failed to meet the standards, and the causal relationship between that
failure and the injury, harm, or damages claimed.@  Id. ' 74.351(r)(6);
Palacios, 46 S.W.3d at 878 (construing former article 4590i, '
13.01).  








To
constitute a good faith effort, the report must discuss the standard of care,
breach, and causation with sufficient specificity (1) to inform the defendant
of the conduct the plaintiff has called into question and (2) to provide the
trial court with a basis to conclude that the claims have merit.  See Bowie Mem=l
Hosp., 79 S.W.3d at 52; Palacios, 46 S.W.3d at 879.  A report does not fulfill this requirement if
it merely states the expert=s
conclusions or if it omits any of the statutory requirements.  Bowie Mem=l
Hosp., 79 S.W.3d at 52; Palacios, 46 S.W.3d at
879.  But the information in the report Adoes
not have to meet the same requirements as the evidence offered in a
summary-judgment proceeding or at trial.@  Palacios, 46 S.W.3d at 879.  When reviewing the adequacy of a report, the
only information relevant to the inquiry is the information contained within
the four corners of the document.  Bowie
Mem=l
Hosp., 79 S.W.3d at 52; Palacios, 46 S.W.3d at 878.

C.  Analysis

Dr.
Hyde argues that Dr. Tabler=s
expert report is conclusory and does not sufficiently detail the standard of
care, breach of the standard of care, or causation as to Dr. Hyde.  

 

1.  Standard of Care and Breach

Although
he acknowledges that the expert report identifies three specific duties he owed
to Tutt, Dr. Hyde argues that these duties are stated only as Abroad
generalities@ and
that the report does not set forth a Aspecific
standard of care.@  Dr. Hyde also contends that Dr. Tabler=s
report does not explain why or how Dr. Hyde breached these standards of care. 

The
relevant portions of Dr. Tabler=s
expert report state:

Dr. Hyde initially evaluated
the patient upon her admission to Millwood Hospital on February 25B26,
2007.  At this time, Dr. Hyde owed a duty
to the patient to make appropriate decisions concerning her course of
psychiatric medication treatment.  Dr.
Hyde improperly continued the drug Concerta for the patient, a stimulant
medication used to treat Attention Deficit Disorder, in spite of this drug=s
contraindication per its label for individuals experiencing agitation and/or
psychosis. . . . 








Dr.
Hyde also owed a duty to the patient to prescribe a course of psychiatric
treatment that would not endanger her safety while treating her underlying
psychiatric condition.  Dr. Hyde failed
the patient by beginning her initial Acocktail@ utilizing dosages and combinations that
failed to treat the patient=s condition without
inducing a life-threatening neurological condition. . . . 

 

Dr. Hyde had a further duty
to closely monitor the patient=s
condition for any signs or symptoms of adverse reaction to the psychiatric drug
Acocktail@
administered to her as treatment of her mental state.  Dr. Hyde=s
failure to initiate a course of psychiatric medications that would consider the
presentation of the patient from February 27 to February 29, 2007 [sic] as a
potential life-threatening condition resulted in the continued administration
of the Acocktail,@
contributing to the patient=s
eventual seizures that resulted in her injuries. 








Dr.
Tabler=s
report adequately describes Dr. Hyde=s
duties and alleged breaches of duty.  The
report states that Dr. Hyde:  (1) had a
duty to make appropriate decisions concerning Tutt=s
medication treatment and allegedly breached this duty by improperly continuing
Concerta, a contraindicated stimulant; (2) had a duty to treat Tutt=s
underlying psychiatric condition while not endangering her safety and allegedly
breached this duty by not treating Tutt=s
condition and improperly using medication dosages and combinations that induced
a life-threatening neurological condition; and (3) had a duty to closely
monitor Tutt for signs of an adverse reaction to the medication and allegedly
breached this duty by not recognizing Tutt was in a potentially
life-threatening condition and by continuing the same medications she had been
taking.  Other sections of Dr. Tabler=s
report provide that NMS Ais a potentially-fatal brain
and bodily disorder,@ that the risk of developing
NMS increases with, among other things, the use of Ahigh
potency agents@
such as Haldol, that Dr. Hyde prescribed the Haldol cocktail for Tutt, and that
Tutt received at least three doses of the Haldol cocktail.  These statements, all contained within the
four corners of Dr. Tabler=s
report, are sufficient to inform Dr. Hyde of the specific conduct Menefee and
Tutt have called into question and provide a basis for the trial court to
conclude that the claim has merit.  Bowie
Mem=l
Hosp., 79 S.W.3d at 52; Palacios, 46 S.W.3d at 879; see
also Baylor Coll. of Med. v. Pokluda, 283 S.W.3d 110, 121B22
(Tex. App.CHouston
[14th Dist.] 2009, no pet.) (holding expert report sufficiently set forth
standard of care and breach of standard of care). 

Dr.
Hyde asserts two other arguments concerning the standard of care and
breach.  He first argues that Dr. Tabler=s
report takes issue with Dr. Reddy=s,
not Dr. Hyde=s,
decision to continue the Haldol cocktail. 
But this argument is unavailing because Dr. Tabler=s
report specifically states that Tutt received three doses of the Haldol
cocktail and that it was a breach of the standard of care for Dr. Hyde to
prescribe the Haldol cocktail without regard to Dr. Reddy=s
alleged negligence.  Second, Dr. Hyde
contends that Dr. Tabler=s report attempts to
establish Aa
global and generic >Standard of Care at Millwood=@ but
that this standard of care does not apply to him.  We need not address this argument, however,
because Dr. Tabler=s report, independent of
this alleged Aglobal
and generic standard of care,@
sufficiently describes specific duties Dr. Hyde owed to Tutt and his alleged
breaches of those duties.  See
Tex. R. App. P. 47.1. 








The
trial court did not abuse its discretion by finding that Dr. Tabler=s
report sufficiently addressed the elements of duty and breach of duty.

2.  Causation

Dr.
Hyde also argues that Dr. Tabler=s
report fails to Aconnect the dots and
specifically explain how [Dr. Hyde=s]
conduct resulted in Ms. Tutt receiving this toxic combination of medication and
how the medication brought about the damages alleged.@  We disagree.








Read
as a whole, Dr. Tabler=s report sufficiently links
his causation opinions to the facts. 
Among other things, the report states: 
(1) Hyde admitted Tutt to Millwood on February 25, 2007, for treatment
of a major depressive disorder with psychosis; (2) Hyde continued Tutt=s
medication combination, which included Seroquel and Concerta; (3) the continued
administration of Concerta Amore
likely than not contributed to the hospital=s
difficulties in abating [Tutt]=s
admission psychosis and encouraged the use of Haldol@;
(4) Dr. Reddy discontinued Dr. Hyde=s
Concerta order on February 25;[3]
(5) Dr. Hyde prescribed the Haldol cocktail for Tutt as needed; (6) Tutt
received at least three doses of the Haldol cocktail; (7) the Haldol cocktail
was an Aexcessively-risky
treatment regimen [that] resulted in the patient=s
initial neurological crisis@;
(8) the risk of developing NMS increases with, among other things, patient
agitation, the Ause of high potency agents@
such as Haldol, and the Aconcomitant use of
predisposing drugs (Haldol + Seroquel)@;
(9) NMS Ais a
potentially-fatal brain and bodily disorder with sequelae requiring active
medication treatment if suspected to prevent complications@;
(10) the continued administration of the Haldol cocktail Acontribut[ed]
to the patient=s
eventual seizures that resulted in her injuries@;
and (11) Athe
tragedy that occurred was a direct result of a combination of the above
medication.  The patient was overly
sedated and any potential over sedation requires special medical care.@  These statements, all contained within the
four corners of Dr. Tabler=s
report, sufficiently link Dr. Tabler=s
causation opinions to the facts.  See
Patel v. Williams, 237 S.W.3d 901, 905B06
(Tex. App.CHouston
[14th Dist.] 2007, no pet.) (holding expert report sufficiently set forth
causation when it presented a chain of events beginning with a contraindicated
prescription and ending with the patient=s
death).  The trial court acted within its
discretion in finding that Dr. Tabler=s
report sufficiently addressed the element of causation.

We
hold that the trial court was justified in finding that Dr. Tabler=s
report discusses the standard of care, breach, and causation with sufficient
specificity to fulfill the statutory requirements.  We therefore overrule Dr. Hyde=s
sole issue.

IV. 
Conclusion








Having
overruled Dr. Hyde=s sole issue, we affirm the
trial court=s
order.

 

 

 

BOB MCCOY

JUSTICE

 

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and MCCOY, JJ.

 

DELIVERED:  April 29, 2010

 











[1]See Tex. R. App. P.
47.4.





[2]We will refer to the
combination of Haldol, Ativan and Benadryl as the  the AHaldol cocktail.@





[3]Dr. Hyde argues the
discontinuation of the Concerta means that his AConcerta order could
not have contributed to any harm suffered by Ms. Tutt.@  But Dr. Hyde prefaces his argument on there
being Ano evidence Ms. Tutt
ever received Concerta at Millwood.@  Not
only does this argument reach beyond the four corners of Dr. Tabler=s report, but it
improperly seeks to require a level of detail required in a summary judgment
proceeding or at a trial.  See
Palacios, 46 S.W.3d at 879.  The
argument also ignores Dr. Hyde=s order for the
Haldol cocktail that Tutt received on at least three occasions.