Dismissed in Part, Affirmed in Part, and Opinion filed April 14, 2009








Dismissed in Part, Affirmed in Part, and Opinion filed April 14, 2009.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-07-00962-CV

NO. 14-07-01096-CV

_______________

 

BAYLOR COLLEGE OF MEDICINE, Appellant

 

V.

 

BERNADETTE POKLUDA, Appellee

                                                                                                                                               


On Appeal from the 190th District Court

Harris County, Texas

Trial Court Cause No. 2007-11099

                                                                                                                                               


 

O P I N I O N








This healthcare liability case is
governed by chapter 74 of the Texas Civil Practice and Remedies Code.  See
Tex. Civ. Prac. & Rem. Code Ann.
'' 74.001-.507 (Vernon 2005 & Supp.
2008).  In cause number 14-07-00962-CV, Baylor College of Medicine brings an
interlocutory appeal from the trial court=s October 1, 2007 order denying
Baylor=s motion to dismiss based on the
asserted inadequacy of an expert report served by appellee Bernadette Pokluda. 
In cause number 14-07-01096-CV, Baylor brings an interlocutory appeal from the
trial court=s December 6, 2007 order denying Baylor=s motion to dismiss based on the
asserted inadequacy of the amended expert report served by Pokluda after the
trial court granted a 30-day extension to cure a deficiency in the original
report.  We dismiss Baylor=s interlocutory appeal in cause number 14-07-00962-CV for
lack of jurisdiction.  We affirm the trial court=s order in cause number
14-07-01096-CV.

BACKGROUND

This healthcare liability action
arises from total knee arthroplasty surgery[1]
performed by Baylor physician Dr. Mark Maffet on March 7, 2005.  Pokluda sued
Baylor and Maffet on February 23, 2007, alleging that Maffet was negligent in
(1) failing to meet the standard of care for placement and monitoring of a
tourniquet during surgery, causing Pokluda Anumbness and weakness in her right
foot with permanent nerve damage;@ and (2) failing to (a) follow Aapplicable standards of care in
disclosure and consent,@ (b) Ause reasonable care, skill and diligence in the care and
treatment@ of Pokluda, and (c) Arecognize the risks associated with the placement of the
tourniquet.@  

Pursuant to a Rule 11 agreement,
Baylor stipulated that Maffet was a Baylor employee acting in the course and
scope of his employment when he treated Pokluda.  She non-suited Maffet on
April 4, 2007.  The trial court signed an AOrder Acknowledging Non-Suit@ on April 17, 2007.  

On July 6, 2007, Pokluda filed an
expert report and curriculum vitae prepared by Dr. Alexander Ghadially, a board
certified orthopedic surgeon, in support of her claim against Baylor.  Baylor
challenged the expert report=s adequacy and filed a motion to dismiss Pokluda=s action with prejudice.  








Baylor contended that the initial
report was inadequate because Ghadially (1) did not establish his
qualifications to opine about the standard of care for a total knee
arthroplasty; (2) failed to delineate the standard of care applicable to an
orthopedic surgeon who performs a total knee arthroplasty and the particulars
of how Maffet deviated from that standard; and (3) failed to explain how Maffet=s allegedly negligent acts caused
Pokluda=s injury.  

Pokluda responded to Baylor=s motion to dismiss on August 9, 2007
and asked for a 30-day extension to cure any deficiencies that the trial court
identified in the expert report.  Baylor replied to Pokluda=s response on August 8, 2007.  On
October 1, 2007, the trial court signed an order denying Baylor=s challenges to Ghadially=s qualifications and to the
sufficiency of the standard of care and breach portions of Ghadially=s report, but granting its challenge
to the causation portion.  The trial court also granted an extension until
October 15, 2007 for Pokluda to cure deficiencies in Ghadially=s expert report as to causation.

Pokluda filed Ghadially=s amended expert report on October 1,
2007.  On October 18, 2007, Baylor filed a notice of appeal from the trial
court=s October 1, 2007 order denying its
motion to dismiss with respect to Ghadially=s qualifications and Maffet=s breaches of the applicable standard
of care.  This accelerated appeal was assigned cause number 14-07-00962-CV.

Baylor filed a second motion to
dismiss Pokluda=s action with prejudice on October 19, 2007, challenging the
amended expert report on three bases.  Baylor contended that the amended report
still was conclusory because it failed to explain how Maffet=s allegedly negligent acts caused
Pokluda=s injuries.  Baylor further contended
that the report did not establish Ghadially=s qualifications to opine about the
standard of care for an orthopedic surgeon performing a total knee
arthroplasty.  Baylor also argued that Ghadially failed to delineate the
standard of care applicable to an orthopedic surgeon who performs a total knee
arthroplasty and failed to explain how Maffet deviated from that standard.








Pokluda responded to Baylor=s second motion to dismiss on
November 14, 2007.  Baylor filed a reply to Pokluda=s response on November 15, 2007. 
After considering Baylor=s challenge to the amended expert report and motion to
dismiss, and hearing arguments of both parties, the trial court signed an order
on December 6, 2007 denying Baylor=s challenge and motion to dismiss. 
Baylor filed a second notice of appeal; this timely appeal was assigned cause
number 14-07-01096-CV.

ANALYSIS

If a plaintiff in a healthcare
liability suit does not serve a timely expert report within 120 days of filing
suit, a trial court Ashall@ grant the defendant=s motion to dismiss the case with
prejudice.  Tex. Civ. Prac. & Rem. Code Ann. ' 74.351(b) (Vernon Supp. 2008).  An
order that denies all or part of the relief sought in such a motion may be
appealed immediately.  Id. ' 51.014(a)(9) (Vernon 2008); Ogletree
v. Matthews, 262 S.W.3d 316, 319 (Tex. 2007).  However, AIf an expert report has not been
served within [120 days] because elements of the report are found deficient,
the court may grant one 30‑day extension to the claimant in order to cure
the deficiency.@  Tex. Civ. Prac. & Rem. Code Ann. ' 74.351(c) (Vernon Supp. 2008).  The
decision to grant an extension may not be appealed even when the extension is
coupled with a denial of a motion to dismiss.  Id. ' 51.014(a)(9); Ogletree, 262
S.W.3d at 319, 321.  

I.          Appeal
From the Trial Court=s October 1, 2007 Order 

Baylor=s first interlocutory appeal
addresses the trial court=s October 1, 2007 order denying Baylor=s initial motion to dismiss based on
its challenges to (1) Ghadially=s qualifications; and (2) the adequacy of Ghadially=s expert report with respect to the
applicable standard of care and deviation from that standard.  We begin by
determining whether this court has appellate jurisdiction. 

Baylor contends that appellate
jurisdiction exists under section 51.014(a)(9) and Ogletree, 262 S.W.3d
at 322.  Ogletree held that A[n]o interlocutory appeal is
permitted when a served expert report is found deficient and an extension of
time granted.@  Ogletree, 262 S.W.3d at 322.  Baylor attempts to distinguish Ogletree,
arguing that Baylor is not appealing the Asame deficiency that the court
granted an extension to cure.@  Baylor argues that the appeal in cause number
14-07-00962-CV focuses on Athe correctness of the [t]rial [c]ourt=s decision regarding issues that
[Pokluda] was not granted an extension to cure.@








In practical terms, Baylor invites us
to read Ogletree narrowly and apply it only to situations in which a Adefendant is attempting to appeal the
trial court=s denial of a motion to dismiss where the order of denial is coupled with
an extension to cure the very same deficiency that was the basis of the motion
to dismiss that the trial court denied.@  We decline this invitation because
the Texas Supreme Court drew no such distinction in Ogletree.  Rather,
the supreme court stated broadly as follows:

[W]hen a report has been served, the actions denying
the motion to dismiss and granting an extension are inseparable.  The statute
plainly prohibits interlocutory appeals of orders granting extensions, and if a
defendant could separate an order granting an extension from an order denying
the motion to dismiss when a report has been served, section 51.014(a)(9)=s ban on interlocutory appeals for extensions would be
meaningless.  We do not think the Legislature contemplated severing the order
denying the motion to dismiss from the order granting the extension when it
expressly provided that orders granting extensions were not appealable on an
interlocutory basis.  

 

Id. at 321. (internal citations omitted).  In Badiga
v. Lopez, 274 S.W.3d 681, 683 (Tex. 2009), the court reiterated that Athe denial of a motion to dismiss,
coupled with the grant of an extension of time to cure a timely but deficient
expert report, are inseparable for purposes of an appeal.@  Therefore, the denial of a motion
to dismiss coupled with an extension of time to cure a deficient expert report
is not appealable under section 51.014(a)(9).  See id.  Under Ogletree
and Badiga, this court lacks jurisdiction to decide Baylor=s interlocutory appeal from the trial
court=s October 1, 2007 order denying
Baylor=s motion to dismiss because that
order also granted an extension of time to cure a deficiency in the report. 








Baylor further argues that this court
has jurisdiction to hear its appeal from the October 1, 2007 order at least as
to Ghadially=s qualifications.  According to Baylor, ABecause a trial court may only grant
an extension to cure defects in the report itself and it may not grant an
extension to obtain a new expert to cure a >deficient= expert, it follows that the trial
court may not grant an extension to allow the plaintiff to rehabilitate the >deficient= expert.@  In making this argument, Baylor
relies on intermediate appellate cases holding that a claimant cannot file a
report from a new expert during the 30-day extension to cure a deficiency in
the original expert report.  See Danos v. Rittger, 253 S.W.3d 294, 298
(Tex. App.CHouston [1st Dist.] 2007), rev=d, 253 S.W.3d 215 (Tex. 2008), and Methodist Health
Ctr. v. Thomas, No. 14-07-00085-CV, 2007 WL 2367619, at *4 (Tex. App.CHouston [14th Dist.] Aug. 21, 2007,
no pet.) (mem. op.).  

This argument fails for two reasons. 
First, it rests on a faulty premise in light of Lewis v. Funderburk, 253
S.W.3d 204, 208 (Tex. 2008).  Funderburk holds that section 74.351
allows a plaintiff to change experts midstream and serve a report from a new
expert to cure a deficiency in the original expert=s report.  Id.  Second, this
argument is not really directed toward appellate jurisdiction; instead, it is
aimed at a decision to grant an extension to allow a plaintiff to bolster an
expert=s qualifications.  No such decision
was made in this case.  The trial court granted an extension so that Pokluda
could address deficiencies in the initial report regarding causation.  The
extension was not granted so that she could bolster Ghadially=s qualifications.  In any event, the
decision to grant an extension to address deficiencies in an expert report is
not appealable under section 51.014(a)(9).  

This court lacks jurisdiction to
consider Baylor=s interlocutory appeal from the October 1, 2007 order.  This
circumstance does not prejudice Baylor because, as discussed below, it can
pursue an interlocutory appeal of the trial court=s December 6, 2007 order denying its
motion to dismiss. 

We dismiss Baylor=s interlocutory appeal in cause
number 14-07-00962-CV.

II.        Appeal
From the Trial Court=s December 6, 2007 Order








Having determined that we lack
jurisdiction to decide Baylor=s appeal from the October 1, 2007 order, we turn to Baylor=s appeal from the trial court=s December 6, 2007 order.  This court
has appellate jurisdiction pursuant to section 51.014(a)(9) because the trial
court=s December 6, 2007 order denied
Baylor=s second motion to dismiss Pokluda=s suit based upon an assertedly
deficient amended expert report, and thereby denied all of the relief Baylor
sought under section 74.351(b).[2]  See Tex.
Civ. Prac. & Rem. Code Ann. ' 51.014(a)(9); Ogletree, 262
S.W.3d at 319.  

A.        Standard
of Review and Applicable Law

We review a trial court=s denial of a motion to dismiss under
section 74.351 for abuse of discretion.  Bowie Mem=l Hosp. v. Wright, 79 S.W.3d 48, 52 (Tex. 2002) (per
curiam); Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46
S.W.3d 873, 875 (Tex. 2001); Group v. Vicento, 164 S.W.3d 724, 727 (Tex.
App.CHouston [14th Dist.] 2005, pet.
denied).  Similarly, we review a trial court=s determination of whether a
physician is qualified to opine in a health care liability case under an abuse
of discretion standard.  Larson v. Downing, 197 S.W.3d 303, 304-05 (Tex.
2006) (per curiam); Mem=l Hermann Healthcare Sys. v. Burrell, 230 S.W.3d 755, 757 (Tex. App.CHouston [14th Dist.] 2007, no pet.). 


To determine whether the trial court
abused its discretion, we must decide whether the trial court acted without
reference to any guiding rules or principles.  Larson, 197 S.W.3d at
304-05; see also Wright, 79 S.W.3d at 52.  When reviewing matters
committed to the trial court=s discretion, a court of appeals may not substitute its own
judgment for the trial court=s judgment.  Wright, 79 S.W.3d at 52.

The trial court should grant a motion
challenging the adequacy of an expert report only when it appears that the
report does not represent a good faith effort to comply with the statutory
definition of an expert report.  See Tex. Civ. Prac. & Rem. Code Ann.
' 74.351(l) (Vernon Supp. 2008).  When
determining if a good faith effort has been made, the trial court is limited to
the four corners of the report and cannot consider extrinsic evidence.  See
Wright, 79 S.W.3d at 52; Palacios, 46 S.W.3d at 878.  








An expert report is defined as a
written report by an expert that provides a fair summary of the expert=s opinions regarding (1) the
applicable standard of care; (2) the manner in which the care provided failed
to meet that standard; and (3) the causal relationship between that failure and
the injury, harm, or damages claimed.  See Tex. Civ. Prac. & Rem.
Code Ann. ' 74.351(r)(6) (Vernon Supp. 2008); Wright, 79 S.W.3d at 52; Palacios,
46 S.W.3d at 879.  

In compliance with these standards,
the expert report must incorporate sufficient information to (1) inform the
defendant of the specific conduct the plaintiff has called into question; and
(2) provide a basis for the trial court to conclude the claims are
meritorious.  Wright, 79 S.W.3d at 52; Palacios, 46 S.W.3d at
879; Patel v. Williams, 237 S.W.3d 901, 904 (Tex. App.CHouston [14th Dist.] 2007, no pet.)
(citing Palacios, 46 S.W.3d at 879).  A report cannot merely state the
expert=s conclusions about these elements.  Wright,
79 S.W.3d at 52; Palacios, 46 S.W.3d at 879.  The expert must explain
the basis for his statements and must link his conclusions to the facts.  Wright,
79 S.W.3d at 52.  However, to avoid dismissal, a plaintiff need not present all
the evidence necessary to litigate the merits of his case.  Palacios, 46
S.W.3d at 879; Patel, 237 S.W.3d at 904.  The report may be informal in
that the information need not fulfill the same requirements as the evidence
offered in a summary judgment proceeding or at trial.  Palacios, 46
S.W.3d at 879; Patel, 237 S.W.3d at 904.  

Additionally, in order to provide an
acceptable report, the expert must establish that he is qualified to do so. 
Tex. Civ. Prac. & Rem. Code Ann. ' 74.351(r)(5)(B) (Vernon Supp.
2008).  Qualifications must appear in the expert report and cannot be
inferred.  See Olveda v. Sepulveda, 141 S.W.3d 679, 683 (Tex. App.CSan Antonio 2004, pet. denied); Hansen
v. Starr, 123 S.W.3d 13, 19 (Tex. App.CDallas 2003, pet. denied). 
Accordingly, analysis of expert qualifications under section 74.351 is limited
to the four corners of the expert=s report and the expert=s curriculum vitae.  Burrell,
230 S.W.3d at 758; see also Palacios, 46 S.W.3d at 878.  








To be qualified to provide opinion
testimony regarding whether a physician departed from the accepted standard of
health care, an expert must satisfy section 74.401.  See Tex. Civ. Prac.
& Rem. Code Ann. ' 74.351(r)(5)(A) (Vernon Supp. 2008).  Section 74.401
provides in pertinent part:

(a) In a suit involving a health care
liability claim against a physician for injury to or death of a patient, a
person may qualify as an expert witness on the issue of whether the physician
departed from accepted standards of medical care only if the person is a
physician who:

(1) is practicing medicine at the
time such testimony is given or was practicing medicine at the time the claim
arose;

(2) has knowledge of accepted
standards of medical care for the diagnosis, care, or treatment of the illness,
injury, or condition involved in the claim; and

(3) is qualified on the basis of
training or experience to offer an expert opinion regarding those accepted
standards of medical care.

(c) In determining whether a witness
is qualified on the basis of training or experience, the court shall consider
whether, at the time the claim arose or at the time the testimony is given, the
witness:

(1) is board certified or has other
substantial training or experience in an area of medical practice relevant to
the claim; and 

(2) is actively practicing medicine
in rendering medical care services relevant to the claim. 

Id. ' 74.401(a), (c) (Vernon 2005).

 

We now turn to Baylor=s specific challenges.

B.        Dr.
Ghadially=s Qualifications

Baylor contends that the trial court
abused its discretion by denying its second motion to dismiss because (1)
Ghadially is not qualified to opine on the applicable standards of care in this
case; and (2) A[b]oard certification in the same specialty as the physician whose care
is at issue is not sufficient to establish that the expert is qualified to
render an opinion on the specific subject at issue.@  Baylor argues that Ghadially was
required to establish that he is qualified to testify regarding total knee
arthroplasty procedures and the use of tourniquets because his criticism of
Maffet stems from the use of a tourniquet during Pokluda=s total knee arthroplasty.  According
to Baylor, Ghadially never established that he has (1) knowledge of the
standard of care relating to a total knee arthroplasty and the placement or
maintenance of a tourniquet during such an orthopedic procedure; (2) the
training or experience to offer an expert opinion regarding the standard of
care; (3) placed and maintained  tourniquets during total knee arthroplasty
procedures; and (4) instructed others in total knee arthroplasty surgery and in
the proper placement or maintenance of a tourniquet during such an orthopedic
procedure. 

Baylor further contends that
Ghadially=s curriculum vitae fails to show that he is qualified to opine in this
case because it does not list any continuing medical education, publications or
presentations by Ghadially dealing with knee arthroplasty surgery or Athe use of tourniquets during any
orthopedic procedure.@ 

Baylor does not dispute that
Ghadially is licensed in Texas and was practicing medicine when he wrote his
report and when Pokluda=s claim arose C the initial statutory requirements
to establish an expert=s qualifications.  See id. ' 74.401(a)(1).








In order to qualify as an expert in a
particular case, a physician need not be a practitioner in the same specialty
as the defendant physician.  Kelly v. Rendon, 255 S.W.3d 665, 674 (Tex.
App.CHouston [14th Dist.] 2008, no pet.); Blan
v. Ali, 7 S.W.3d 741, 745 (Tex. App.CHouston [14th Dist.] 1999, no pet.); see
also Broders v. Heise, 924 S.W.2d 148, 153‑54 (Tex. 1996).  The test
is whether the report and curriculum vitae establish the witness=s knowledge, skill, experience,
training, or education regarding the specific issue before the court that would
qualify the expert to give an opinion on that particular subject. Roberts v.
Williamson, 111 S.W.3d 113, 121 (Tex. 2003).  In assessing whether a
witness is qualified on the basis of training or experience to render expert
opinions, a trial court shall consider whether the proffered witness (1) is
board certified or has other substantial training or experience Ain an area of medical practice relevant
to the claim,@ and (2) is actively practicing medicine Ain rendering medical care services relevant
to the claim.@  Tex. Civ. Prac. & Rem. Code Ann. ' 74.401(c) (emphasis added).

Ghadially is a board certified
orthopedic surgeon with 28 years of experience practicing surgery.  His
curriculum vitae lists medical continuing education in orthopedic surgery. 
Ghadially states in his amended report, AI have treated many patients over the
years with problems such as . . . Pokluda[=s].  I have performed many surgeries
similar to that which she subsequently underwent including total joint
arthroplasty.@  He further states:

I am familiar with the standard of
care applicable to Orthopaedic surgery because of the following facts:

$ It is necessary for me to know the
standard of care in order for me to practice my specialty,

$ I am required in my position as a
member of the medical staff at various hospitals to practice within the
standard of care,

$ I am familiar with the peer-reviewed
literature and the standards of care contained therein,

$ I had to meet the standard of care
in order to become board certified.

$ The standard of care as it applies
to me applies in an identical manner to the practice of Dr. Mark Maffet.








I am qualified to recognize a breach
in the standard of care because of the following facts:

$ I know what the standard of care is
because of the facts above,

$ I have been board certified for
twenty eight years,

$ I have practiced surgery for twenty
eight years,

$ I am familiar with the peer-reviewed
literature,

$ I have worked in environments
similar to that of Dr. Mark Maffet,

I am qualified to render an opinion
as to causation because of the following facts:

$ My training to become board
certified,

$ My twenty eight years of experience,

$ My experience as a medical director,

$ My knowledge of the peer-reviewed
literature,

$ My review of thousands of medical
cases,

$ My personal observations of the
outcomes of treatment,

$ My personal observations of the
outcomes due to failure of treatment,

$ My personal observations of surgical
misadventure,

$ My experience in identifying a
breach in the standard of care and how it results in a specific harm.

I reviewed the following in
preparation of this report.

$ Medical records from CLEAR LAKE
NEUROLOGY

$ Imaging studies from BAYLOR COLLEGE
OF MEDICINE Department o  f Orthopaedics

$ Medical records of MARK MAFFET,
M.D., P.A.








$ Medical records of HERMANN MEMORIAL
CITY HOSPITAL

$ Medical records of MEMORIAL VILLAGE
SURGERY CENTER . . . .

(emphasis in original).  Ghadially
also discusses the applicable standards of care for Pokluda=s treatment during the total knee
arthroplasty.  He concludes his report by stating, AMy opinions in this matter are
supported by the factual evidence in the medical records and my 28 years of
experience as a practicing Orthopaedic surgeon, as well as my knowledge of the
evidence-based peer reviewed literature.@

Based on Ghadially=s education, training and experience
in treating patients similarly situated to Pokluda and performing surgeries
similar to the surgery Pokluda underwent, the trial court acted within its
discretion in concluding that Ghadially is qualified to render an opinion on
the standard of care at issue in this case.  See Kelly, 255
S.W.3d at 674.  We reject Baylor=s contention that Ghadially is
unqualified because he has not Aperformed the surgery at issue C total knee replacement.@  We have found no authority for the
proposition that a surgeon must have performed exactly the same surgery as the
defendant physician in order to render an expert opinion.  The standard is not
so narrow.  The statute provides that a witness is qualified if he is board
certified and Ais actively practicing medicine in rendering medical care services relevant
to the claim.@  Tex. Civ. Prac. & Rem. Code Ann. ' 74.401(c) (emphasis added). 
Ghadially satisfies this requirement.  The trial court acted within its
discretion in concluding that Ghadially=s amended report is not inadequate
and satisfies the qualification requirements set forth in section 74.401.  See
id. ' 74.401(a), (c). 








Baylor next asserts that an expert=s Aboard certification in the same
specialty as the physician whose care is at issue is not sufficient to
establish that the expert is qualified to render an opinion on the specific
subject at issue in a case.@  According to Baylor, an expert=s board certification does not
qualify the expert to testify about every medical procedure encompassed by that
specialty.  Baylor argues that Ghadially never establishes his knowledge of the
standard of care relating to total knee arthroplasty, or the placement and
maintenance of a tourniquet during an orthopedic procedure.

To support its assertion that board
certification in the same specialty is not sufficient to establish that the
expert is qualified to render an opinion, Baylor cites Richburg v. Wolf,
48 S.W.3d 375, 378 (Tex. App.CEastland 2001, pet. denied).  Baylor misplaces its reliance
on Richburg.  In Richburg, the expert=s qualifications or board
certification were not at issue; rather, the court held that the expert=s report was inadequate because it
(1) lacked specificity as to the applicable standard of care and the breach of
that care; and (2) failed to explain the causal relationship between the
defendant physician=s treatment and the damages suffered.  Id. at 378.  

Further, section 74.401(c)(1) states
that the court should consider whether the expert is Aboard certified or has substantial
training or experience in an area of medical practice relevant to the claim.@  Tex. Civ. Prac. & Rem. Code
Ann. ' 74.401(c)(1).  The statute does not
require an expert to have performed a specific procedure in order to opine. 
Additionally, we already have held that the trial court acted within its
discretion when it concluded that Ghadially=s amended report and curriculum vitae
establish that he has sufficient knowledge of the standard of care relating to
a total knee arthroplasty; that he is qualified on the basis of training and
experience; and that he practiced medicine at the time he rendered his
opinions. 

We hold that the trial court acted
within its discretion by denying Baylor=s second motion to dismiss as to
Ghadially=s qualifications, and we overrule Baylor=s first issue.

C.        Standard
of Care and Breach








In its second issue, Baylor contends
that the amended expert report is defective and does not represent a good faith
effort to comply with the statutory requirements for an expert report because
it fails to set forth Athe applicable standard of care for an orthopedic surgeon
when a tourniquet is used@ during a  total knee arthroplasty and Maffet=s deviation from that standard. 
Baylor claims that Ghadially lists four standards of care, but Autterly fails to provide an opinion
regarding what those standards entail and how Maffet=s actions breached such
standards.@  

An expert report need not marshal the
plaintiff=s proof, but it must include the expert=s opinions on all three statutory
elements.  Gray v. CHCA Bayshore L.P., 189 S.W.3d 855, 859 (Tex. App.CHouston [1st Dist.] 2006, no pet.). 
Although it is not sufficient for an expert simply to state that he knows the
standard of care and assert it was not met, a fair summary is something
less than a full statement of the applicable standard of care and how it was
breached.  Palacios, 46 S.W.3d at 880.  A fair summary need only
set out what care was expected but not given.  Id.  

With respect to the applicable
standard of care, Dr. Ghadially states in pertinent part:

The applicable standard of care as to Dr. Mark
Maffet in the treatment of Bernadette Pokluda requires that the patient be
careful [sic] assessed preoperatively to evaluate the risk/benefit ratio
of undergoing a major elective procedure.

 

Once embarked upon the surgical intervention, the
applicable standard of care as to Dr. Mark Maffet in his treatment of
Bernadette Pokluda is to take care not to injure nerves during the surgical
procedure from the tourniquet.

 

The applicable standard of care as to Dr. Mark Maffet
in the treatment of Bernadette Pokluda requires that care be taken that the
tourniquet be properly padded and maintained during the surgical procedure.

 

The applicable standard of care as to Dr. Mark Maffet in
the treatment of Bernadette Pokluda requires that care be taken that the
patient=s peroneal nerve be properly padded and protected at
all times. 

 








These statements address the standard
of care applicable before surgery regarding patient evaluation, and the
standard of care during surgery.  Ghadially states that a patient should be
carefully evaluated before surgery.  Ghadially also describes the proper
conduct of a surgeon using a tourniquet during surgery, noting the need Ato take care not to injure@ the patient=s nerves Aduring the surgical procedure from
the tourniquet,@ to properly pad and maintain the tourniquet during the
surgical procedure, and to properly pad and protect the patient=s peroneal nerve at all times. 
Ghadially addressed the standards in sufficient detail to apprise Baylor of the
care expected from Maffet.

With regard to breach of the standard
of care, Ghadially states: 

Dr. Mark Maffet deviated from the standard of care by
injuring the patient=s nerve during surgery.

 

Dr. Mark Maffet deviated from the standard of care by
not carefully maintaining the tourniquet during the surgical procedure.

 

Dr. Mark Maffet deviated from the
standard of care by not carefully protecting the peroneal nerve during the
surgical procedure.

The trial court acted within its
discretion when it concluded that Ghadially provided a fair summary of how
Maffet deviated from the described standards of care during the surgical
procedure.  Ghadially opined that Maffet breached the applicable standards of
care because he injured Pokluda=s nerve during surgery, he failed to maintain the tourniquet
during the surgical procedure, and he failed to protect the peroneal nerve
during the surgical procedure.

The trial court acted within its
discretion in finding that Ghadially, in his amended report, adequately
complied with the standard of care and breach requirements of section 74.351
with respect to the surgical procedure.

D.        Causation

In its third issue, Baylor argues
that the amended expert report is defective because Ghadially=s opinions on causation Aare conclusory and do not adequately
establish the causal link between Dr. Maffet=s alleged breach of the standard of
care and the claimed damages.@  We disagree.

Ghadially opines that Pokluda Awas injured as a proximate result of
the surgical intervention@ and that she Asuffered injury to her nerve either
as a result of the tourniquet, improper tourniquet installation and padding or
improper maintenance and use of the tourniquet or a combination of the above.@  He states that 








[t]he manner in which the improper
tourniquet installation and padding cause the harm in this case is as follows. 
The tourniquet cuts of[f] the blood supply to the tissues distal to the
tourniquet and if left on too long or with too high a pressure causes nerve
damage.  If the padding is not adequate or improperly placed then excessive
pressure can be transmitted to the underlying structures and, if as in this
case excessive, then nerve damage occurs.

Ghadially also opines that the Anew neurological complaints and
post-operative problems are a proximate result of the failure of Dr. Mark
Maffet to take care that the tourniquet be properly padded and maintained
during the surgical procedure.@








The trial court acted within its
discretion in concluding that Ghadially=s opinions regarding causation
suffice to meet the minimum statutory requirements.  See Lakshmikanth
v. Leal, 13-08-00389-CV, 2009 WL 140741, at *2-3 (Tex. App.CCorpus Christi Jan. 22, 2009, pet.
filed) (mem. op.) (trial court acted within its discretion in concluding that
expert=s opinion on causation was not
conclusory); Renaissance Surgical Ctrs.-S. Tex., L.L.P. v. Jimenez, No.
13-07-121-CV, 2008 WL 3971096, at *9-10 (Tex. App.CCorpus Christi Aug. 28, 2008, no
pet.) (mem. op.) (same); see also Mosely v. Mundine, 249 S.W.3d 775,
780-81 (Tex. App.CDallas 2008, no pet.) (trial court acted within its
discretion in concluding that expert=s opinion as to causation was not
mere conjecture and speculation); Apodaca v. Miller, No. 08-06-00226-CV,
2008 WL 3166967, at *4 (Tex. App.CEl Paso Aug. 7, 2008, no pet.)
(expert report provided a fair summary of the causal connection between the
breach of care and plaintiff=s injuries); Springer v. Johnson, No. 07-07-0424-CV,
2008 WL 2346385, at *8-9 (Tex. App.CAmarillo June 4, 2008, no pet.) (trial
court did not abuse its discretion in concluding that expert report met the
statutory causation requirement); Baptist Health Sys. v. Pedraza, No.
04-07-00404-CV, 2007 WL 3355405, at *3-4 (Tex. App.CSan Antonio Nov. 14, 2007, no pet.)
(mem. op.) (trial court did not abuse its discretion in determining that the
expert report was adequate as to causation).  Ghadially explains how
nerve damage occurs; when the tourniquet is improperly installed or padded, Athe tourniquet cuts off the blood
supply to the tissues distal to the tourniquet@ and Aif left with too high a pressure@ causes nerve damage.  Ghadially
opines that the nerve damage occurred in this case because excessive pressure
was transmitted due to improper padding or placement of the tourniquet during
surgery.

Baylor argues that Maffet=s alleged breaches of the standard of
care are not consonant with Ghadially=s assertions regarding causation. 
According to Baylor, the alleged deviations from the standard of care occurred
during surgery but Ghadially=s Aconclusions regarding causation relate to actions taken
before surgery.@  Baylor=s linkage between causation and actions taken before surgery
is based on Ghadially=s conclusion that Aimproper tourniquet installation and
padding cuts off the blood supply and causes nerve damage.@  Baylor=s argument assumes that tourniquet
installation and padding placement cannot be part of Athe surgical procedure.@

The trial court was not required to
make this assumption or to read the report as narrowly as Baylor does. 
Ghadially states that Maffet=s deviations from the standard of care include Anot carefully protecting the peroneal
nerve during the surgical procedure.@  The trial court reasonably could
have read Ghadially=s reference to Aprotecting the peroneal nerve@ as encompassing the installation,
padding, and maintenance of the tourniquet during the surgical procedure so as
to avoid cutting off the blood supply and causing nerve damage. 








The two‑fold purpose of an
expert report under section 74.351 is to inform the defendant of the specific
conduct the plaintiff has called into question, and to provide the trial court
with a basis to determine whether the plaintiff=s claims have merit.  Patel,
237 S.W.3d at 906.  Pursuant to this standard, we conclude that Ghadially=s amended report sufficiently
addresses the element of causation, linking the alleged breaches of the
standard of care during the surgical procedure to Pokluda=s alleged injury C numbness and weakness in Pokluda=s right foot with permanent nerve
damage.  Therefore, keeping in mind that expert reports are a preliminary
method to show a plaintiff has a viable cause of action that is not frivolous
or without expert support, we hold the trial court acted within its discretion
in concluding that the amended report complied with section 74.351=s causation requirement.  We overrule
Baylor=s third issue.[3]

CONCLUSION

We dismiss Baylor=s interlocutory appeal in cause
number 14-07-00962-CV for lack of jurisdiction.  

In cause number 14-07-01096-CV, the
trial court acted within its discretion in concluding that Ghadially
established the necessary qualifications, and that his amended report
adequately complied with the standard of care, breach, and causation
requirements of section 74.351 relating to Maffet=s actions during the surgical
procedure.  Accordingly, we affirm the trial court=s December 6, 2007 order.

 

 

/s/        William J. Boyce

Justice

 

 

 

Panel consists of Justices Yates,
Seymore, and Boyce.








 









[1]           Arthroplasty is the operative formation or
restoration of a joint, such as a hip or knee.  Sides v. Guevera, 247
S.W.3d 293, 295 n.1 (Tex. App.CEl Paso 2007,
no pet.).  Here, the term describes surgery in which Pokluda=s knee was replaced.





[2]           Baylor asserts that it Aappeals Judge Elrod=s
granting of an extension to cure the insufficient causation portion of Dr.
Ghadially=s report, as well as Judge Gamble=s order denying [Baylor=s] motion to dismiss and challenge to Dr. Ghadially=s qualifications, the sufficiency of the standard of
care and causation portions of the second report.@  We do not address Baylor=s
complaint that an extension was unwarranted because we do not have appellate
jurisdiction to reach that complaint.  In re Watkins, No. 06-0653, 2009
WL 153251, at *1 (Tex. January 23, 2009) (orig. proceeding).  





[3]           Baylor also argues that Ghadially=s report is deficient because it does not state how
Maffet deviated from the standard of care for conduct before surgery.  We do
not address this contention because its resolution is not necessary to final disposition
of the appeal.  See Tex. R. App. P. 47.1.  Under section 74.351(a), the
obligation to serve an expert report meeting section 74.351(r)(6)=s requirements exists with respect to Aeach physician or health care provider against whom a
liability claim is asserted.@  The word Aclaim@ is defined to
mean Aa health care liability claim.@  Tex. Civ. Prac. & Rem. Code Ann. ' 74.351(r)(2) (Vernon Supp. 2008).  The phrase Ahealth care liability claim@ is defined as Aa
cause of action against a . . . physician for treatment, lack of treatment, or
other claimed departure from accepted standards of medical care . . . .@  Id. '
74.001(a)(13) (Vernon 2005).  Under section 74.351(b)(2), the remedy for
failure to timely serve an expert report is a trial court order that Adismisses the claim with respect to the physician or
health care provider, with prejudice to the refiling of the claim.@  We have concluded that Ghadially=s amended report satisfies section 74.351(r)(6)=s requirements insofar as Pokluda=s Ahealth care
liability claim@ is predicated on Maffet=s alleged deviations from the standard of care during surgery. 
Therefore, dismissal of Pokluda=s Ahealth care liability claim@ against Maffet is not warranted under section
74.351(b)(2) regardless of whether Ghadially=s
report also satisfies section 74.351(r)(6)=s
requirements with respect to Maffet=s
alleged deviations from the standard of care before surgery.